768 P.2d 638

**STATE of Arizona, Appellee,**

v.

**Gerald Arthur WHITNEY, Appellant.**

**No. CR–87–0258–AP.**

Supreme Court of Arizona,
In Banc.

Jan. 12, 1989.

Robert K. Corbin Atty. Gen. by William J. Schafer, III, Chief Counsel, Criminal Div., and Susanna C. Pineda, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by James H. Kemper, and Garrett W. Simpson, Deputy Public Defenders, Phoenix, for appellant.

CAMERON, Justice.

## I. JURISDICTION

Defendant, Gerald Arthur Whitney, appeals his convictions for one count of kidnapping, a Class 2 felony, A.R.S. § 13–1304 and one count of aggravated assault, a Class 3 felony, A.R.S. § 13–1204(A)(2), (B). Because the aggravated assault was found to be a "dangerous nature" offense and committed while defendant was on parole, the trial court sentenced defendant to life imprisonment. A.R.S. § 13–604.02(A). He was also sentenced to 15.75 years imprisonment for the kidnapping conviction. A.R.S. § 13–604.02(B). The two terms were ordered to run concurrently with one another, but consecutively to the sentence imposed in another case in Maricopa County Cause No. CR–137394. A.R.S. § 13–604.02. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031 and –4033.

## II. ISSUES

We address the following issues:

A. Was Count II of the information (aggravated assault) duplicitous and if so, was defendant prejudiced?

B. Did the trial court abuse its discretion when it permitted the state to amend the information to allege that the aggravated assault charge was a "dangerous" offense?

C. Did the trial court err when it found defendant's statements to the police were voluntarily made and admissible at trial?

D. Did the trial court abuse its discretion when it found statements by "Francisco Cano," "Ruben Cano" and "Geraldo Perez" admissible under the hearsay exceptions of Rules 803(2) and 804(b)(5)[1] of the Arizona Rules of Evidence?

E. Did the trial court abuse its discretion in ruling that defendant's prior convictions were admissible for impeachment purposes?

F. Did the trial court err in removing the question of the validity of the prior convictions from the jury?

G. Did the trial court err in its response to the question raised by the jury?

H. Did the trial court err in denying defendant's motion for a new trial?

I. Are minute entries of defendant's sentences at variance with the sentence imposed by the judge?

---

**1.** Petitioner claimed error under Rule 803(24). We believe, however, that the statements were admitted under Rule 804(b)(5) because declarants were unavailable in this case.

J. Did the trial court err in failing to give defendant credit for 144 days of pretrial incarceration?

## III. FACTS AND PROCEDURAL BACKGROUND

On 26 April 1987, Donna, age 16, and Denise, age 17, were hitchhiking in the area of Van Buren and 27th Avenue in Phoenix, Arizona. They were trying to get to Tempe, Arizona, to see Denise's boyfriend. Defendant stopped and agreed to give them a ride. While on the freeway toward Tempe, defendant began to rub his finger on Donna's leg. Donna told him to stop and moved closer to Denise. Defendant exited the freeway at 7th Street. The girls tried to get out of the vehicle when it slowed at a traffic light, but were unable to do so because defendant turned and accelerated. The girls asked defendant to pull over, and he did so at the intersection of University and 7th Street. The girls got out of the vehicle and began running toward 7th Street. Both girls turned around and saw the defendant drive his truck toward them and "peel his tires." Although they tried to get away from him, defendant kept maneuvering his vehicle toward them. The girls testified that at one point he was about three feet behind them and was trying to run over them.

When Donna no longer heard the truck, she stopped and yelled to Denise that she could not run anymore. She turned around to look for defendant. He was directly behind her. He grabbed her arms and pinned them behind her back. He pulled her backwards stating that she was going with him. When she tried to fight back, defendant put his arm around her throat and began to choke her. Meanwhile, Denise tried to stop a car by jumping on its hood. While Denise was on the hood, another car stopped and three men got out. Defendant then jumped in his pickup and drove away with the three men in pursuit.

Department of Public Safety Officer Michael Bonin testified at trial that he was sitting in his parked police vehicle when he saw a vehicle heading north on 7th Street lock its brakes and come to a stop in the left-hand turn lane. The three men ran up to his car shouting that "somebody may have possibly been raped" and that "somebody [had] a girl in a headlock" and that they had been following the suspect. Officer Bonin then headed south on 7th Street and found Donna "curled up on a park bench." As he approached her, he observed that she was "very upset" and "crying." By this time, the three men arrived at the scene. They gave Officer Bonin a description of the vehicle and its license number. He ran the plate number on his radio and found it belonged to a 1986 Isuzu pickup. When the Phoenix Police officers arrived on the scene, Officer Bonin returned to his patrol. As he approached the freeway, he saw a vehicle matching the description given by the men and eventually stopped it at 15th Avenue and Broadway.

When Officer Michael Polombo arrived at the scene at 7th Street, he spoke with the three men who were "very excited" and "anxious" and "all talking at once." Officer Polombo had to separate them and talk to them one at a time to find out what happened. They described the assailant. Officer Polombo also took their names and addresses. He then went to 15th Avenue and Broadway where he dusted the defendant's vehicle for fingerprints. He found prints that were later identified as one of the victim's.

Defendant's version of what happened was that he had picked up the girls and was heading toward Tempe on the freeway when one of them asked him to exit. He did and when he got to University and 7th Street he said the girls got out and began to argue. When he asked them what was "going on," they swore at him, and he got back into his truck and left. From jury verdicts and judgments of guilt and sentences thereon, defendant appeals.

## IV. QUESTIONS

### A. Duplicitous Information

Defendant argues that Count II of the information is duplicitous in that it alleges that defendant "intentionally placed DON-

NA ... AND/OR DENISE ... in reasonable apprehension of imminent physical injury...."

■ The law in Arizona requires that each offense must be charged in a separate count. *State v. Axley*, 132 Ariz. 383, 392, 646 P.2d 268, 277 (1982); Ariz.R.Crim.P. 13.3(a), 17 A.R.S. An indictment which does not comply with Rule 13.3 because it charges separate crimes in the same count is duplicitous. *Baines v. Superior Court*, 142 Ariz. 145, 151, 688 P.2d 1037, 1043 (App.1984). Duplicitous indictments are prohibited because they fail to give adequate notice of the charge to be defended, they present a hazard of a non-unanimous jury verdict, and they make a precise pleading of prior jeopardy impossible in the event of a later prosecution. *Wong Tai v. United States*, 273 U.S. 77, 81, 47 S.Ct. 300, 301, 71 L.Ed. 545 (1927); *Spencer v. Coconino County Superior Court, Div. 3*, 136 Ariz. 608, 610, 667 P.2d 1323, 1325 (1983).

However, as our court of appeals has noted:

> The fact that one of the elements of the crime alleged is a separately indictable offense does not render the indictment duplicitous. In this respect, the indictment is no different than an indictment under the felony-murder statute.

*Baines*, 142 Ariz. at 151, 688 P.2d at 1043 (citing A.R.S. § 13–1105(A)(2)).

■ In this case, defendant was charged with one count of aggravated assault based on his pursuit of the two girls with his pickup truck. Even though the effect of his actions was an assault on both of the girls, the count in question is predicated on a single act. We have noted:

> [W]here numerous transactions are merely parts of a larger scheme, a single count encompassing the entire scheme is proper.

*State v. Via*, 146 Ariz. 108, 116, 704 P.2d 238, 246 (1985), *cert. denied*, 475 U.S. 1048, 106 S.Ct. 1268, 89 L.Ed.2d 577 (1986) (citing *United States v. Zeidman*, 540 F.2d 314 (7th Cir.1976)).

We also note that even if the count was duplicitous, it could be cured by a proper instruction:

> "[A] duplicitous ... indictment is remediable by the court's instruction to the jury particularizing the distinct offense charged in each count of the indictment."

*State v. Axley*, 132 Ariz. 383, 392, 646 P.2d 268, 277 (1982) (quoting *United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir.), *cert. denied*, 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 183 (1981).)

In the instant case, the instruction stated:

> In order for the second count of aggravated assault to be proven, the following two things must be shown:
> 1. The defendant, Gerald Arthur Whitney, committed an assault on Donna ... and/or Denise....
> 2. The defendant used a dangerous instrument in committing the assault.
> Proof of an assault is shown by proving the defendant intentionally put Donna ... and/or Denise ... in reasonable apprehension of immediate physical injury.

From this instruction, the jury had to find that the defendant's action in chasing the girls with his pickup was one aggravated assault. Also, the defendant's ability to plead prior jeopardy in a subsequent prosecution was not hindered in any way. The record is clear that he was convicted for his single act of chasing the two girls. *See Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

Neither was the defendant denied an essential right to his defense. The defendant's defense was that the offenses charged never took place and that the victims merely fabricated their stories. We find no prejudice to the defendant.

**B. Amendment of the Information**

On 17 August 1987, the day of the trial, the court heard pretrial motions. The trial court indicated to the state that its allegation lacked language referring to the dangerous nature of the offense charged in Count II. The state then moved to amend its allegation to reflect that appellant used a "dangerous instrument, to wit, a 1986

Isuzu white pickup" during the commission of the assault. Defendant's counsel objected on the basis of timeliness. When questioned by the court, defense counsel admitted to the trial court that he had prepared the case on the basis that the state would file an allegation of dangerousness as to Count II. The trial court granted the state's motion stating that because the defendant expected the filing of the allegations, he was not prejudiced by the amended filing. Defendant contends that this was error.

■ Before a defendant can be sentenced under the enhanced punishment provisions, the dangerous nature of the convicted crime must be:

(1) Charged in the information; and

(2) Found to be true by the trier of fact.

*State v. Barrett,* 132 Ariz. 88, 89, 644 P.2d 242, 243 (1982).

■ The prosecutor has the discretion to allege the dangerous nature of the offense. *Barrett,* 132 Ariz. at 89 n. 4, 644 P.2d at 243 n. 4. The rules require, however, that any allegation of dangerousness must be made within twenty days prior to the date set for trial. Ariz.R.Crim.P. 16.1. The motion was untimely.

■ Although the state's allegation was untimely, under A.R.S. § 13–604(K), the trial court had discretion to allow the allegation any time before the trial began as long as it was clear that there was no prejudice to the defendant. *See* A.R.S. § 13–604(K); *State v. Bly,* 127 Ariz. 370, 373, 621 P.2d 279, 282 (1980). In order to establish prejudice, the burden is on the defendant to make some showing that the failure of the state to make the allegation at an earlier time somehow "misled, surprised, or deceived" defendant. *State v. Bayliss,* 146 Ariz. 218, 219, 704 P.2d 1363, 1364 (App. 1985). We find the defendant was not prejudiced in this case. From the facts, it was apparent that the element of dangerousness was part of the crime. Defendant was aware of this and prepared his defense accordingly. We find no error.

## C. Were Defendant's Statements Voluntary?

At trial, defendant moved to suppress the statements he made to law enforcement officers. The trial court held a voluntariness hearing and heard testimony concerning the circumstances surrounding defendant's statements.

Officer William Stahl testified that he interviewed defendant at police headquarters regarding the allegations made by the two victims. During the course of this interview, defendant continuously asked whether he would be going to jail or be released. Officer Stahl told defendant that, based on the stories told by the victims, he would probably be jailed because the police had two victims telling them similar stories and the defendant "had not talked to [the police] about the situation or given [the police] any information." Defendant then made a statement to the police. The trial court found no coercion on the part of the investigating officers and permitted the state to introduce testimony regarding these statements.

■ Defendant claims error. The burden is on the state to show by a preponderance of evidence, considering the totality of the circumstances, that the statements were made voluntarily. *State v. Griffin,* 148 Ariz. 82, 85, 713 P.2d 283, 286 (1986); *State v. Graham,* 135 Ariz. 209, 211, 660 P.2d 460, 462 (1983). The question of voluntariness is determined by "an objective evaluation of police conduct and not by defendant's subjective perception of reality." *State v. Carrillo,* 156 Ariz. 125, 136–37, 750 P.2d 883, 894–95 (1988) (referring to *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)). The trial court's finding of voluntariness will not be disturbed on appeal absent a showing of clear and manifest error. *Griffin,* 148 Ariz. at 85, 713 P.2d at 286.

■ In this case, the trial court heard testimony that the defendant received his *Miranda* rights, that defendant willingly spoke to the police, and that the police made no promises or threats to obtain his statements. In characterizing the police statements, the court said:

[L]ook, you are under arrest for these events, we have statements from two victims which indicate you committed the crime, we have nothing to the contrary, and when you asked me whether or not you are going to be released, I am telling you that in my opinion you are probably not going to be released because we have statements from the victims indicating a crime was committed and nothing to the contrary. So therefore, under those circumstances, if you ask me whether or not you are going to be released, the answer is, probably not.

Now, that seems to me rather logical and reasonable and non-coercive. It's basically saying how a decision on release is going to be made, which is, rather simply, I look at the evidence and see what it shows me and make a determination. With nothing to the contrary except statements of the victims, you are probably not going to be released.

Doesn't strike me as very coercive. It strikes me as being a rather logical and reasonable statement to the defendant as to what the situation was.

For all of those reasons, I find them non-coercive and I will admit the statements.

We agree with the trial court and find no error.

D. Were Statements By "Francisco Cano," "Ruben Cano," and "Geraldo Perez" Admissible?

By the time of trial, the three men had disappeared, and it appeared that they had given the police false addresses, if not false names as well.

Defendant moved to prevent the state from presenting the testimony of the missing witnesses should they be found or, in the alternative, from admitting any hearsay testimony regarding statements made by these three eyewitnesses to police officers.

The trial court disagreed and found that the statements made by these three witnesses qualified as "excited utterances" "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event...." Ariz.R.Evid. 803(2), 17A A.R.S. The trial court also found the statements admissible as "evidence of material fact that is probative and the interests of justice would be served because there are equivalent circumstantial guarantees of trustworthiness." Ariz.R.Evid. 804(b)(5), 17A A.R.S. The trial court stressed that there was "[in]sufficient time for these three excited people to make up a story, [it was a] stream of consciousness-type of discussion, and the fact that the officer took notes at the time," made the witnesses' statements trustworthy.

"The excited utterance exception is based upon the settled belief that excited utterances are reliable because they are uttered spontaneously at times of great excitement or stress and without time to contemplate or fabricate." *State v. Carr*, 154 Ariz. 468, 471, 743 P.2d 1386, 1389 (1987). *See, e.g.,* S. SALTZBURG & K. REDDEN, FEDERAL RULES OF EVIDENCE MANUAL 829 (4th ed. 1986) ("When a declarant makes a statement under the stress of excitement, and the statement relates to the exciting event or condition, the statement is not excluded because of the hearsay rule. It is said that spontaneity gives rise to trustworthiness").

■ Three requirements must be met for the proper admission of an excited utterance under this exception to the hearsay rule:

(1) there must be a startling event;

(2) the words spoken must be spoken soon after the event so as not to give the person speaking the words time to fabricate; and

(3) the words spoken must relate to the startling event.

*State v. Ritchey*, 107 Ariz. 552, 555, 490 P.2d 558, 561 (1971) (citing 6 WIGMORE, EVIDENCE § 1750 (3d ed.)).

The defendant objects on three grounds. First, the length of time that elapsed between the "exciting event" and the time the individuals made the statements to Officer Bonin and Officer Polombo was too long to result in spontaneous declarations. Second, the statements were not reliable

because some of them were responses to questions posed by the officers and because the three men gave false information regarding their addresses. Third, the statements were highly prejudicial because they included speculation that the defendant had raped one of the girls.

■ The length of time between the event and the statements, however, is only one factor to be considered. *State v. Barnes*, 124 Ariz. 586, 589–90, 606 P.2d 802, 805–06 (1980). The time element cannot be applied in a mechanical fashion in order to determine admissibility. *See State v. Rivera*, 139 Ariz. 409, 411, 678 P.2d 1373, 1375 (1984). A time lapse is not in itself a bar to admission of the statement. *Id.* As McCORMICK ON EVIDENCE noted:

> Perhaps an accurate rule of thumb might be that where the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process. Testimony that the declarant still appeared "nervous" or "distraught" and that there was a reasonable basis for continuing emotional upset will often suffice.

McCORMICK, EVIDENCE § 297, at 706 (2d ed. 1972); *see also Barnes*, 124 Ariz. at 589–90, 606 P.2d at 805–06 (statements made in state of shock are admissible even though they were not made immediately after the event); *State v. Yslas*, 139 Ariz. 60, 65, 676 P.2d 1118, 1123 (1984) (declarant's physical and emotional condition is "the important thing").

■ In the instant case, immediately after witnessing the event and immediately after the defendant drove off, the witnesses followed the defendant and in doing so spotted Officer Bonin. In excited tones, they told him what they had seen. About twenty minutes elapsed from the time the three men witnessed the crimes until the time that they spotted Officer Bonin. The witnesses made their second set of statements approximately twenty minutes later to Officer Polombo. Polombo testified that the witnesses were so excited at that time

that he had to separate them and ask them questions so he could determine what they were saying. We believe the witnesses were still under the stress of the event when they gave their statements to the officers. We do not find that the twenty to forty intervening minutes affected the admissibility of these statements as excited utterances.

■ Defendant next contends that the statements cannot be admitted as excited utterances because they were made in response to questions by the police officers. We again disagree. We have held that a statement is not necessarily inadmissible because it is made in response to a question. *Barnes*, 124 Ariz. at 590, 606 P.2d at 806. In the instant case, the witnesses themselves initiated the conversation, and Officer Polombo testified that he separated them and asked them questions because they were so excited they were all talking at once. These statements still qualify as excited utterances even though some were in part responses to the officer's questions.

■ Defendant next argues that it was also error to admit these statements because they were unfairly prejudicial. Defendant claims that the witnesses' statements that they thought the defendant may have raped one of the girls were prejudicial. We disagree. The witnesses' statements to the officer were that they saw a crime going on and someone possibly had been raped. These statements regarding the rape were not admitted to show that a rape had been committed, rather these statements were admissible to show why Officer Bonin reacted as he did and how he found Donna. There was no evidence of a rape and the jury was not misled in this regard. We find no error.

■ The defendant also contends, however, that admission of the statements violated his sixth amendment right of confrontation. We disagree. Under the test articulated in *Barker v. Morris*, 761 F.2d 1396, 1399 (9th Cir.1985), *cert. denied*, 474 U.S. 1063, 106 S.Ct. 814, 88 L.Ed.2d 788 (1986), the introduction of out-of-court statements is permissible if they are necessary and

reliable. Such statements do not violate defendant's right to confrontation. *Id.* at 1403.

Defendant finally notes that the three men were unavailable to testify in court because testimony at trial revealed that the men gave false addresses, and no one could be found under those names. Defendant argues that the false addresses show a lack of reliability and disqualify the statements as excited utterances. We have not confined the application of the excited utterance exception solely to indisputably reliable witnesses. *State v. Jeffers*, 135 Ariz. 404, 419–20, 661 P.2d 1105, 1120–21, *cert. denied*, 464 U.S. 865, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983). Admission as a hearsay exception is not foreclosed by the fact that a witness's reliability has been impugned. *See id.* at 420, 661 P.2d at 1121 (citing *State v. Yee*, 121 Ariz. 398, 590 P.2d 937 (App.1978)). Such goes to the weight of the statements, not their admissibility. *Jeffers*, 135 Ariz. at 420, 661 P.2d at 1121.

Other facts show that these statements were given under circumstances indicating reliability. First, the witnesses were neutral; they were strangers to both parties. Second, shortly after the event, each of the witnesses separately and independently told the same story while they were still excited. Third, the story gathered from each of the witnesses corroborated what the victims said. Based on these circumstances, we find that the fact that the witnesses gave false addresses at the end of their statements to Officer Polombo is not enough to destroy their credibility on their version of the story.

We will not reverse the trial court's ruling under the excited utterance exception to the hearsay rule absent a clear abuse of discretion. *Rivera*, 139 Ariz. at 410, 678 P.2d at 1374. "The modern trend is toward a liberal interpretation of this [hearsay] exception, leaving admissibility largely to the discretion of the trial court." *Id.* We find no error.

## E. Prior Convictions

The state alleged that defendant had previously been convicted of the following offenses:

1. Possession of stolen property, a felony, in Maricopa County Superior Court Cause No. CR–100375;

2. Burglary in the Second Degree, a felony, in Maricopa County Superior Court Cause No. CR–102089;

3. Perjury, a felony, in Maricopa County Superior Court Cause No. CR–104281;

4. Perjury, a felony, in Maricopa County Superior Court Cause No. CR–104281;

5. Perjury, a felony, in Maricopa County Superior Court Cause No. CR–104281;

6. Theft, a felony, in Maricopa County Superior Court Cause No. CR–137394.

The defendant moved to preclude the state from using defendant's prior convictions to impeach his credibility. After a hearing pursuant to Rule 609(a), Ariz.R. Evid., the trial court denied the motion.

Defendant contends that the trial court failed to make the proper findings in the Rule 609 hearing to determine whether the probative value of the convictions outweighed their prejudicial effect. Rule 609(a), Ariz.R.Evid., reads as follows:

(a) *General Rule.* For the purpose of attacking the credibility of a witness, evidence that he has been convicted of crime shall be admitted if elicited from him or established by public record, if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, and if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or (2) involved dishonesty or false statement, regardless of the punishment.

We have reviewed the transcript of the 609 hearing and find that the trial court did not make the specific findings required by Rule 609. Although the better procedure is to make an "on-the-record finding" based on specific facts and circumstances, this omission is not fatal. *State v. Ellerson*, 125 Ariz. 249, 252, 609 P.2d 64, 67

(1980), *overruled in part on other grounds by State v. Fettis*, 136 Ariz. 58, 664 P.2d 208 (1983). The transcript reveals that the court listened to arguments of counsel and then made its decision.

THE COURT: That's okay. I understand that. But the situation is, normally I would tend to go along with you in the sense of just allowing the felony convictions in, but not if the cause goes directly to proof of this offense. But since the stuff is allowed in for credibility and the perjury counts direct[ly] relate to credibility, it seems to me it's different than a guy who's charged with possession of narcotic drugs and has one or two prior narcotic drug convictions.

I will allow the use of the convictions in this particular matter, six prior convictions, or whatever they are. Burglary second, theft, three counts of perjury and whatever that second one was, but only if the defendant testifies.

Where "it is clear from a reading of the record that the probative value has been balanced against the prejudice, a specific finding need not be made." *State v. Poland*, 144 Ariz. 388, 400, 698 P.2d 183, 195 (1985), *aff'd*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986). We believe the trial court properly balanced the probative value against the prejudicial effect to determine that the prior convictions were admissible for impeachment. We find no abuse of discretion.

## F. Proof of the Prior Convictions

■ Defendant took the stand and admitted the prior convictions. Defendant contends that the trial court erred when the court rather than the jury found the existence of the six prior felony convictions based on defendant's trial testimony. Defendant argues that under *State v. Cook*, a jury trial is not required only if (1) the allegation of prior convictions includes attachments of superior court records, fingerprints and photographs of the defendant; (2) defendant admits to the convictions; and (3) the state shows it is prepared to prove the priors. 150 Ariz. 470, 473–74, 724 P.2d 556, 559–60 (1986).

We do not read *Cook* as requiring the existence of all three requirements before the matter may be taken from the jury. It will suffice if the defendant admits the prior convictions during his testimony at trial. *See State v. Pacheco*, 121 Ariz. 88, 90, 588 P.2d 830, 832 (1978) (accused's admission while testifying may sufficiently establish the prior conviction); *State v. Seymour*, 101 Ariz. 493, 501, 421 P.2d 517, 520 (1966) (defendant's admission on the stand of a prior conviction was sufficient proof of it); *State v. Hunter*, 137 Ariz. 234, 238, 669 P.2d 1011, 1015 (App.1983) (defendant's admission on cross-examination of prior convictions is inherently reliable). The court may, without submitting the matter to the jury, find that the allegation of prior conviction for the purposes of enhancement of penalty, is true. *State v. Gilbert*, 119 Ariz. 384, 385, 581 P.2d 229, 230 (1978);

We are of the opinion that it would be an "unwarranted refinement of technicality" to hold that in spite of defendant's own unequivocal admission of a prior conviction for the same felony in the same state as charged in the information, for the jury nevertheless to be required to pass upon the question.

*Seymour*, 101 Ariz. at 501, 421 P.2d at 520. The trial court did not err in removing the question of prior convictions from the jury.

■ Defendant also argues that under *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the trial court had a duty to tell defendant that, by testifying, he risked waiving his right to jury determination of his prior convictions. We do not agree. *Boykin* concerns the matters the defendant waives in pleading guilty. In the instant case, the defendant did not plead guilty and *Boykin* does not apply. Also, we find nothing in the record indicating that the defendant was not aware of the risk he took in testifying.

## G. Question by the Jurors [2]

■ The court instructed the jury as follows:

2. This is not one of the questions specifically raised by the defendant. It was, however, dis-

The difference between attempted aggravated assault and aggravated assault is that in the latter the commission of the crime succeeded and in the former the defendant did not succeed because the acts which he put in motion were interrupted.

During the jurors' deliberation, they submitted a question to the court asking, "does 'succeeded' mean successful at inflicting physical harm or can it mean successful at putting the girls in reasonable apprehension of immediate physical injury?" The judge responded:

Both counsel are here and I have read them an answer which I think is appropriate.... The answer to your question is that succeeded in the fulfillment of the crime of aggravated assault can be either the infliction of physical harm or putting the girls in reasonable apprehension of immediate physical injury.

.    .    .    .    .

Gentlemen, do you think that is an appropriate answer?

MR. TUCKER: Yes, I do.

MR. SHEPERD: Yes, Your honor.

THE COURT: We have agreed. I will send that answer back to the jury. Thank you.

Defendant argues that the trial court's response not only failed to clarify the situation, but aggravated the existing problem. We disagree. Also, we note that defendant made no objection to the instruction. We find no error.

## H. Motion for New Trial

The defendant argues that the trial court erred in denying his motion for a new trial, which raised the following issues: (1) the admission of the "excited utterances" of the three men; (2) the trial court's finding of defendant's prior convictions, and (3) insufficient evidence to support the "guilty" verdict in connection with Count I (kidnapping). We have answered the first two questions in this opinion, *supra*.

The defendant's last contention that he should be granted a new trial is

cussed in the duplicitous information question.

based on his claim that there was insufficient evidence at trial to show that the victim was not released voluntarily. We disagree. The evidence showed that the defendant did not release Donna until the three men approached him. Had the three men not witnessed what was happening to Donna and stopped to help her, the defendant would have been able to complete his intention of taking her with him. The jury specifically found that the defendant had not voluntarily released the victim, and this finding is supported by the evidence. We find no error. The trial court properly denied defendant's motion for a new trial.

## I. Defective Minute Entry?

At sentencing the trial judge stated:

THE COURT: On the aggravated assault dangerous, Class 3, I will sentence him to life imprisonment. He shall serve no less than 25 years, which sentence is consecutive to the parole sentence he's presently serving with DOC, and I don't know the number of that but I will get that.

On the kidnapping I will sentence him to 15.75 flat, consecutive to the sentence he's presently serving parole on. The two sentences will be concurrent. 15.75 is flat under [13] 604.02(b). The aggravated assault is under 13–604.02(a). This will be concurrent, but consecutive to the present sentence that he has under CR 137394, Maricopa County Superior Court. I think it was for theft in this particular case, and on which he was released on parole on March 11, 1987.

.    .    .    .    .

MR. SHEPERD: Your honor, I was a little confused. I believe what you sentenced him to is a mandatory life term on Count [II], aggravated assault.

THE COURT: Right, dangerous.

MR. SHEPERD: Dangerous.

THE COURT: Concurrent—

MR. SHEPERD: With Count [I] kidnapping

.    .    .    .    .

We elect to discuss this question separately.

MR. SHEPERD: The kidnapping

THE COURT: 15.75 years flat consecutive to—they both are consecutive to the theft that he was on parole for. They are both concurrent to each other, but one is a life term on the aggravated assault dangerous and the other is a flat term, 15.75.

The trial court sentenced the defendant to a *presumptive term of 15.75 years,* which reflects two prior felony convictions. The minute entry incorrectly indicates that the charge was "aggravated" and "dangerous."

Defendant notes that the minute entry indicated that he had two prior felony convictions when he committed the offense of aggravated assault, dangerous, which is superfluous under the mandates of A.R.S. § 13–604.02(A). The state agrees that the minute entries do not follow the sentences. Oral pronouncement in open court controls over the minute entry. *State v. Hanson,* 138 Ariz. 296, 304–05, 674 P.2d 850, 858–59 (App.1983). We, therefore, remand the matter to the trial court with directions to correct the minute entries to conform to the sentences imposed by the court.

J. Credit for 144 days of Pre-trial Incarceration

 Defendant contends that the trial court erroneously failed to give him credit for time served prior to sentencing. We disagree. At the time of defendant's arrest, the Department of Corrections placed a hold on defendant due to his parole violation. At sentencing, the trial court ordered that the sentences imposed run consecutively to the sentence being served in Maricopa County Superior Court Cause No. CR–137394. Defendant is not entitled to double credit. *State v. Horrisberger,* 133 Ariz. 569, 570, 653 P.2d 26, 27 (App.1982). We find that the trial court did not err when it refused to give the defendant credit for time served.

## V. FUNDAMENTAL ERROR

We have reviewed the record for fundamental error as required by A.R.S. § 13–4035, *Anders v. California,* 386 U.S.

738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and *State v. Leon,* 104 Ariz. 297, 451 P.2d 878 (1969). We find no error.

## VI. DISPOSITION

The defendant's convictions and sentences for kidnapping and aggravated assault are affirmed. The matter is remanded to the trial court for the purposes of correcting the minute entries on sentencing.

GORDON, C.J., FELDMAN, V.C.J., MOELLER, J., and HOLOHAN, J. (Retired), concur.