NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ROBERTO HERNANDEZ LOPEZ, *Appellant.*

No. 1 CA-CR 13-0897
FILED 1-15-2015

Appeal from the Superior Court in Maricopa County
No. CR2012-103865-001
The Honorable Dawn M. Bergin, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

The Hopkins Law Office, Tucson
By Cedric Martin Hopkins
*Counsel for Appellant*

Roberto Hernandez Lopez
*Appellant*

---

### MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Andrew W. Gould joined.

---

**T H U M M A**, Judge:

**¶1** This is an appeal under *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). Counsel for defendant Roberto Hernandez Lopez has advised the court that, after searching the entire record, he has found no arguable question of law and asks this court to conduct an *Anders* review of the record. Lopez was given the opportunity to file a supplemental brief pro se, and has done so. This court has reviewed the record and has found no reversible error. Accordingly, Lopez's convictions and resulting sentences are affirmed.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2** In January 2012, Lopez was charged by Indictment with eight counts of sexual conduct with a minor, each a class 2 felony and dangerous crime against children (DCAC) (Counts 1, 3, 4, 5, 7, 8, 9, and 10), one count of public sexual indecency to a minor, a class 5 felony (Count 2) and one count of molestation of a child, a class 2 felony and a DCAC (Count 6). As amended, the Indictment alleges the offenses occurred between July 4, 2007 and July 3, 2009, when the victim, G.A., would have been 11 or 12 years old.

**¶3** Lopez's first trial resulted in a mistrial when the jury was unable to reach a unanimous verdict on any charge. The evidence at the second trial showed G.A. was approximately ten years old when her mother brought both G.A. and her older sister, L.A., from Mexico to the United States. G.A. testified that all of the assaults occurred in the apartment that her family shared with Lopez when she was approximately 11 years old. The first sexual assault occurred when Lopez was home alone and G.A. came home from school and went into the bedroom she shared with her mother and sister. G.A. testified to subsequent sexual assaults that

---

[1] This court views the facts "in the light most favorable to sustaining the verdict, and resolve[s] all reasonable inferences against the defendant." *State v. Rienhardt*, 190 Ariz. 579, 588–89, 951 P.2d 454, 463–64 (1997) (citation omitted).

took place in the bathroom and on the couch over the next six months to a year.

¶4 After G.A. disclosed these incidents to her boyfriend and father in January 2012, law enforcement started an investigation which included G.A. making a confrontation call to Lopez. During the call, Lopez did not specifically deny the sexual assault, saying instead that "evidence must be presented" and "I have to demand evidence . . . of everything I'm being accused of." Later, Lopez submitted to multiple interviews with law enforcement and, after taking a Computer Voice Stress Analyzer (CVSA) examination, he admitted to engaging in "sexual acts" with G.A. After the administration of the CVSA, Lopez confessed to specific sexual acts and not others, and gave the location of where the acts occurred.

¶5 Administration of the CVSA examination consists of using a laptop hooked up to the subject. A series of questions, which the police officer and the subject formulate together, are then asked and the subject's voice is analyzed. At no time did the jury here receive the unredacted transcript pertaining to the formulation of the questions or the actual administration of the CVSA examination. In a pre-trial motion, however, Lopez argued he should "be permitted to introduce the fact that the State's agents hooked him up to a machine, told him that he was taking a polygraph examination, and told him that he failed the examination after claiming he had not committed the alleged acts." The superior court initially precluded any mention of the CVSA during trial, given the general proscription against the admissibility of polygraphs set forth in *State v. Hoskins*, 199 Ariz. 127, 144 ¶ 69, 14 P.3d 997, 1014 (2000). Subsequently, Lopez moved in limine to preclude evidence of the administration of the CVSA examination, including Lopez's confession. After noting the motion in limine sought to preclude the confession, the superior court denied the motion.

¶6 During trial, the superior court stated it had done "some additional research on the issue of the admissibility of the voice stress test" and "was looking at whether the Defendant had a Federal Due Process right to have evidence that he was subjected to the voice stress test admitted" and found that Lopez did have a right to offer such evidence. In doing so, however, the superior court stated evidence of the actual CVSA examination results indicating deception were still precluded. Accordingly, the superior court reversed its decision by allowing Lopez to present such

evidence to argue to the jury that his pretrial statements were involuntary.[2] The parties then jointly reviewed the transcript of the CVSA interview and submitted a redacted transcript that was given to the jury at Lopez's request. The transcript included mention of the CVSA but excluded the time period immediately after the administration of the CVSA examination where the police officer discussed the results with Lopez.

¶7        Lopez testified on his own behalf and asserted law enforcement threatened him during the time period when the CVSA results were being discussed, thereby opening the door to the admission of the conversation regarding the CVSA examination results. After Lopez's testimony opened the door, the jury was given a less-heavily redacted transcript from the police interview detailing the conversation that occurred immediately after the administration of the CVSA examination — including certain questions the police officer asked during the CVSA examination and the officer stating that deception was indicated in Lopez's answers to those questions. This part of the transcript oftentimes lacked details regarding specific questions and answers but, on some occasions, contained such details. Additionally, the jury was shown the relevant portion of the video of the interview where the police officer entered the room and discussed the results after administering the CVSA examination. That portion of the video was not provided to the jury during deliberations.

¶8        At the close of the evidence, the superior court granted Lopez's motion to dismiss Counts 9 and 10, finding there was no substantial evidence to support a conviction on those counts. The jury was subsequently given a limiting instruction stating the results of the CVSA examination could only be considered to determine whether Lopez's confession was voluntary.

¶9        The jury found Lopez guilty of Counts 1, 2, 5, 6, 7 and 8 and not guilty of Counts 3 and 4. In special verdict forms, the jury found G.A. was "11 years of age or younger" at the time of the offense (for Counts 1, 5, 7, 8) and that his conduct constituted "penetration" (for Counts 1, 7, 8). The jury also found Count 5 constituted "masturbatory" conduct.

¶10        The superior court sentenced Lopez to three consecutive life sentences with no possibility of release until 35 years (flat time) for Counts

---

[2] Despite reliance on this argument, Lopez made no pretrial challenge to the voluntariness of his statements and no pretrial voluntariness hearing was held.

1, 7 and 8. The court sentenced Lopez to 1.5 years in prison for Count 2 (concurrent with Counts 1 and 6); 20 years in prison for Count 5 (consecutive to Count 1) and 17 years in prison for Count 6 (concurrent with Counts 1 and 2).[3] Lopez was given 694 days of presentence incarceration credit.

¶11        This court has jurisdiction over Lopez's timely appeal pursuant to Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031, and -4033(A)(1) (2015).[4]

**DISCUSSION**

¶12        This court has reviewed and considered counsel's brief and appellant's pro se supplemental brief, and has searched the entire record for reversible error. *See State v. Clark*, 196 Ariz. 530, 537 ¶ 30, 2 P.3d 89, 96 (App. 1999). Searching the record and briefs reveals no reversible error. The record shows that Lopez was represented by counsel, and assisted by an interpreter, at all stages of the proceedings and counsel was present at all critical stages. The evidence admitted at trial constitutes substantial evidence supporting Lopez's convictions. From the record, all proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. The sentences imposed were within the statutory limits and permissible ranges.

¶13        The court's review of the record reveals three issues that merit further discussion.

I.        **Admission Of CVSA Results Into Evidence Was Not Fundamental Error.**

¶14        In his pro se supplemental brief, Lopez argues "[t]he stress test was inadmissible evidence." However, Lopez offered evidence of the CVSA at trial as part of his attempt to show that his pretrial statements to

---

[3] Although the sentencing minute entry lists the concurrency of the sentences somewhat differently, when a discrepancy exists between the oral pronouncement and the minute entry, the "[o]ral pronouncement in open court controls over the minute entry." *State v. Whitney*, 159 Ariz. 476, 487, 768 P.2d 638, 649 (1989) (citation omitted). Accordingly, this court relies upon and affirms the superior court's oral pronouncement.

[4] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

law enforcement were involuntary. In fact, Lopez urged the superior court to allow the fact that he was subjected to the CVSA into evidence. Although the court originally precluded all CVSA evidence, it was persuaded during trial by Lopez's due process argument to allow the jury to hear evidence that Lopez had participated in the CVSA and that he was told he failed the test to support his contention that his confession was involuntary. Despite allowing mention of the CVSA, the court still precluded the State from eliciting the actual results of the test (which showed deception) by warning that "nothing about what questions were asked or the actual results of the test would be admitted, simply that he [Lopez] was told that he failed the test."

¶15            During his testimony, Lopez gave several explanations as to why he confessed to the sexual assaults during his interviews with law enforcement. Among other things, Lopez testified that the law enforcement officer threatened him by sliding a blank piece of paper over and saying that, if Lopez didn't confess, allegations would be made up against him. That resulted in the following exchange during cross-examination:

> Q      And so he threatened you before you started telling him that you did these things, right?
>
> A      Yes.
>
> Q      And you also testified yesterday that the threat came after you finished the voice stress test, right?
>
> A      Yes.
>
> Q      So just to make sure I'm clear, between the time that you finished the voice stress test and the time that you told him you had done these things, that's when he threatened you, right?
>
> A      Yes.

The prosecutor then asked to approach the bench and, during a sidebar, argued that Lopez "opened the door to unredacting everything that happened between the end of the stress test and when he confessed and also applying [sic] that video for the Jury," which included the officer generally going over the results of the CVSA examination with Lopez.

Outside of the presence of the jury, the court then questioned Lopez regarding the timing of the alleged threat. Afterwards, the court stated that "I think that [the prosecutor] has the right to show what did happen during that time. And I can – I'll give a limiting instruction to the Jury about the – that they can't consider the results, they're only to consider those for purposes of determining what happened, what was said during the – during the interrogation. But, at this point, I think [Lopez] opened the door to that coming in." The prosecutor affirmed "I will literally present the redacted portions of the transcript, play the video, and ask [the police officer], during that period, did you threaten him that you were going to make stuff up if he didn't confess?"

¶16　　　　Although defense counsel offered to stipulate that no threat was made, he did not object to this evidence being admitted. Accordingly, the transcript from the interview describing some of the questions asked and the results of the test, including the police officer's comments that certain results indicated deception, were admitted into evidence. Additionally, through the police officer's rebuttal testimony, the jury was shown the relevant portion of the video of the interview, showing the police officer entering the room and discussing the results after administering the CVSA examination (although the video was not provided to the jury during deliberations). The State asked no questions regarding the results or the reliability of the results, but rather focused on whether a threat had been made during that time frame. The court then gave the jury a limiting instruction, stating that "the results of voice stress tests are not admissible to prove that someone was actually lying" and that consideration of this evidence "must be limited to the purposes of determining what happened during the interview and whether the Defendant's confession was voluntary."

¶17　　　　Because Lopez failed to make a timely objection at trial, the review on appeal is limited to fundamental error. *See* Ariz. R. Crim. P. 21.3(c); *State v. Henderson*, 210 Ariz. 561, 567 ¶¶ 19–20, 115 P.3d 601, 607 (2005). "Accordingly, [the defendant] 'bears the burden to establish that "(1) error exists, (2) the error is fundamental, and (3) the error caused him prejudice."'" *State v. James*, 231 Ariz. 490, 493 ¶ 11, 297 P.3d 182, 185 (App. 2013) (citations omitted). Lopez has not shown that the admission of this part of the transcript constitutes error. Lopez's trial strategy was to use evidence of the CVSA as tending to show his confession was involuntary; furthermore, Lopez had already introduced into evidence the fact that he was told he failed the CVSA examination. Allowing the prosecutor to elicit testimony regarding the police officer's questions and behavior during the portion of the interview when Lopez alleges he was threatened does not

constitute error, especially because Lopez's testimony opened the door to this line of questioning. Moreover, the jury is presumed to have followed the court's instructions. *Elliot v. Landon*, 89 Ariz. 355, 357, 362 P.2d 733, 735 (1961). The narrow scope of the prosecutor's questions and the limiting instruction given to the jury further weigh against a finding of error.

**¶18** Even assuming error in admitting such evidence, Lopez has not shown how such an error would be fundamental. Error is fundamental when it affects the foundation of the case, deprives the defendant of a right essential to his defense or is of such magnitude that the defendant could not possibly have had a fair trial. *See Henderson*, 210 Ariz. at 567 ¶ 19, 115 P.3d at 607. Lopez argued to the superior court that evidence of the CVSA was essential to his defense. It cannot be said that it was fundamental error when the superior court allowed the previously redacted portions of the interview into evidence when the jury already knew Lopez had participated in the CVSA and that law enforcement told Lopez that he had failed the test. Accordingly, even assuming error, Lopez has not shown how such error would be fundamental.

**¶19** In reaching this conclusion, this court notes the motions in limine in superior court assume, and this court acknowledges, that the CVSA is akin to a polygraph test and that "all references to polygraph tests, absent stipulation, are inadmissible for any purpose in Arizona." *Hoskins*, 199 Ariz. at 144 ¶69, 14 P.3d at 1014 (citing cases). The superior court was convinced by Lopez's argument that evidence of the CVSA should be admitted as part of his defense that his confession was involuntary. The subsequent references to the results were not received for the truth of the matter asserted, but rather to rebut Lopez's allegation that law enforcement threatened him at this point in the interview. Under these narrow and specific facts, this court cannot say it was fundamental error to allow the jury to read the transcript of the conversation that took place after the CVSA examination.

## II.    The Indictment Was Not Multiplicitous.

**¶20** Lopez argues that there "is no distinction" in Counts 1, 7 and 8 showing they "were different acts," meaning the indictment is multiplicitous. The superior court properly rejected this same argument at trial. An indictment is multiplicitous if it charges a single offense in multiple counts. *State v. Via*, 146 Ariz. 108, 116, 704 P.2d 238, 246 (1985). Here, Count 1 refers to "victim's first disclosure, penile/vaginal in her mother's bedroom." Count 8 refers to "defendant's admission of skin to skin penile/vaginal" and Count 9 refers to "defendant's admission of

penile/vaginal with a condom." The evidence at trial, including testimony from both Lopez and G.A., was sufficient to show that each of these counts correspond to separate incidents, meaning the Indictment was not multiplicitous.

### III. The Prosecutor Did Not Engage In Prosecutorial Misconduct.

**¶21** Lopez argues the prosecutor engaged in misconduct by arguing false or inadmissible evidence and misleading the jury. A claim of prosecutorial misconduct warrants reversal only if "'(1) misconduct is indeed present[,] and (2) a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying defendant a fair trial.'" *State v. Moody*, 208 Ariz. 424, 459 ¶ 145, 94 P.3d 1119, 1154 (2004) (citation omitted). Here, Lopez argues the prosecutor misled the jury during closing arguments because of how he characterized the evidence. The prosecutor's argument that G.A.'s "version of what happened has been consistent" was not improper nor did it mislead the jury. Similarly, the prosecutor did not argue inadmissible evidence to the jury when discussing testimony about whether threats were made to Lopez after Lopez took the CVSA examination. On this record, there was no prosecutorial misconduct.

**CONCLUSION**

**¶22**      This court has read and considered counsel's brief and Lopez's pro se supplemental brief, and has searched the record provided for reversible error and has found none. *Leon*, 104 Ariz. at 300, 451 P.2d at 881; *Clark*, 196 Ariz. at 537 ¶ 30, 2 P.3d at 96. Accordingly, Lopez's convictions and resulting sentences are affirmed.

**¶23**      Upon filing of this decision, defense counsel is directed to inform Lopez of the status of his appeal and of his future options. Defense counsel has no further obligations unless, upon review, counsel identifies an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85, 684 P.2d 154, 156–57 (1984). Lopez shall have thirty days from the date of this decision to proceed, if he desires, with a pro per motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama