NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

TILFERT DARRELL VAUGHN, *Appellant*.

No. 1 CA-CR 17-0032
FILED 1-25-2018

Appeal from the Superior Court in Maricopa County
No. CR2015-106371-001 DT
The Honorable Christopher A. Coury, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eric Knobloch
*Counsel for Appellee*

Bain & Lauritano, PLC, Glendale
By Amy E. Bain
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

**W I N T H R O P**, Presiding Judge:

¶1          Tilfert Darrell Vaughn ("Appellant") appeals his convictions for burglary in the first degree, two counts of aggravated assault, two counts of kidnapping, and sexual assault.  Appellant argues the trial court abused its discretion by (1) admitting statements from one of the victims in a 911 telephone call, (2) precluding evidence the victims met while incarcerated in the Arizona Department of Corrections ("ADOC"), and (3) admitting evidence he was kicked off a city bus approximately 1.5 miles from the victims' apartment less than one hour after the crimes were committed.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY[1]

¶2          On the night of November 4-5, 2014, girlfriends K.T. and C.S. held a party at their Phoenix apartment, and later, they walked to a nearby bar, where they remained until closing.  As they returned to their apartment, C.S., who was visibly intoxicated, stumbled, fell, and vomited, and she did so again at the apartment before the women fell asleep together.

¶3          In the early morning, K.T. awoke and saw the bathroom light on.  She got up to shut off the light, but a naked man holding a large knife confronted her.  The man ordered K.T. to return to bed, placed the knife against her throat, and sexually assaulted her.  During the assault, C.S. awoke, tried to push the man off K.T., and suffered lacerations to several fingers on her left hand from the knife.  C.S. clutched her hand to her chest, began crying, and curled up in the fetal position, while K.T. tried to calm her as the sexual assault continued.  The man eventually got up, went to the bathroom, and dressed, while warning the women not to move.  When they believed the man had left, the women called 911.

¶4          A Phoenix police officer who arrived at the victims' apartment observed C.S. crying hysterically and screaming, "[H]e's got my keys, he's going to come back."  K.T. provided a description of the attacker and reported numerous items missing from the apartment, including C.S.'s keys.  Many of the missing items were later found in a nearby vacant apartment, in which detectives also found a wine bottle and a cigarette butt.

---

[1]          We view the facts in the light most favorable to sustaining the verdict and resolve all reasonable inferences against Appellant.  *See State v. Kiper*, 181 Ariz. 62, 64 (App. 1994).

K.T. underwent a forensic examination, which indicated injury to her cervix.

**¶5**       Detectives obtained and reviewed surveillance video of that night from the apartment complex, the bar, and a nearby convenience store. They established a man as a person of interest after video reflected his presence at the convenience store, then near the victims as they left the bar, then entering the victims' apartment complex as they entered, and later smoking a cigarette at the complex. After appearing on the apartment surveillance video several times within an hour, the man did not reappear on the video for approximately two hours—when he exited the apartment complex and walked away at the same time the victims called 911. After the media broadcast the man's image, a caller identified the man as Appellant.

**¶6**       Detectives interviewed Appellant, who confirmed he was the man shown in the video. Appellant claimed to lack memory of most of that night's events, but remembered being kicked off a city bus later that morning at a different location. Officers collected Appellant's DNA and confirmed through forensic testing that it matched DNA taken from K.T.'s vagina during her forensic examination, with the probability of an unrelated individual having a DNA profile matching that DNA profile at 1 in 990 quintillion. Appellant's DNA also matched DNA samples taken from the wine bottle and cigarette butt found in the vacant apartment.

**¶7**       After a twenty-one-day trial, the jury found Appellant guilty as charged, and found the State had proven three aggravating factors for each charge.[2] After finding Appellant had at least two historical prior felony convictions, the trial court sentenced him to a combination of concurrent and consecutive maximum and aggravated sentences totaling fifty-six years' imprisonment in ADOC, and credited him for 706 days of presentence incarceration.

**¶8**       We have jurisdiction over Appellant's timely appeal. *See* Ariz. Const. art. 6, § 9; Ariz. Rev. Stat. §§ 12-120.21(A)(1) (2016), 13-4031 (2010), 13-4033(A) (2010).

---

[2]       The jury found each offense (1) involved lying in wait for or ambushing the victim during commission of the offense, (2) involved the use, threatened use, or possession of a deadly weapon or dangerous instrument, and (3) caused physical, emotional, or financial harm to the victim.

**ANALYSIS**

**¶9**        Appellant challenges three of the trial court's evidentiary rulings. The trial court retains substantial discretion in determining the relevance and admissibility of evidence, and we will not disturb its rulings absent a clear abuse of that discretion. *State v. Rose*, 231 Ariz. 500, 513, ¶ 62 (2013) (citation omitted).

   *I.        Admission of the 911 Call*

**¶10**        Appellant argues the trial court abused its discretion by granting the State's motion in limine to admit C.S.'s statements during the 911 call as an "excited utterance."

**¶11**        Under Rule 801, Arizona Rules of Evidence, an out-of-court statement offered to prove the truth of the matter asserted constitutes hearsay. *State v. Bass*, 198 Ariz. 571, 577 (2000). Generally, hearsay is inadmissible, *see* Ariz. R. Evid. 802, unless one of the exceptions to the hearsay rule applies. Hearsay is admissible as an "excited utterance" under Rule 803(2) if it "relat[es] to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Thus, to be admissible as an excited utterance, three elements must be met: (1) a startling event, (2) the statement must be made soon after the event to ensure the declarant had no time to fabricate, and (3) the statement must relate to the startling event. *Bass*, 198 Ariz. at 577 (citing *State v. Whitney*, 159 Ariz. 476, 482 (1989)). Additionally, the declarant must personally observe the matter of which she speaks. *Id.* (citing *State v. Dixon*, 107 Ariz. 415, 418 (1971)).

**¶12**        Before trial, the State filed a motion in limine, arguing the 911 call placed by the victims was admissible at trial as an excited utterance. After responsive briefing, the court listened to the tape and then informed the parties that it planned to grant the motion as to the statements by C.S. but deny the motion as to K.T.'s statements:

> I think with respect to the first declarant [C.S.], clearly, there's a startling event. Clearly, the statements were relating to the startling event and it was soon after it was close in time. But more importantly, the first declarant on the phone was completely emotional the entire time. She was crying. She was hysterical. The 9-1-1 caller told her to do some breathing exercises, in fact, so she wouldn't hyperventilate. I'm inclined to say that the call's in as to the first caller.

As far as the second declarant [K.T.] on the 9-1-1 tape, I don't think that's an excited utterance. That -- this person seemed calm, cool, collected. Yes, there may have been a startling event. Yes, it was soon after the event, but this person did not seem to be in an emotional condition, and some of the statements were recounting what there was. That person figured out what had been stolen. In fact, for the second declarant on the 9-1-1 call, it strikes me that the most emotion demonstrated was actually yelling at the first declarant to kind of calm down and be calm in this. My inclination is, again, to allow the statements of the first declarant but not allow the statements of the second declarant, using the excited utterance exception to the hearsay rule.

I'll hear argument on that just so that you all can dissuade me in case I'm making a mistake on this.

Appellant argued C.S. "didn't actually witness the alleged [sexual assault], that she was passed out." The court responded that it did not "ha[ve] to be eyewitness testimony, but I think there has to be direct sensory proof." The State informed the court that C.S. would testify she not only had been cut, but had heard the sexual assault occurring. The court then affirmed its order, ruling the 911 call was admissible as to C.S.

¶13  In this case, the State presented reasonable evidence that C.S.'s 911 call was an excited utterance. First, a series of startling events occurred: Appellant broke into the victims' apartment during the night, sexually assaulted K.T., and cut C.S.'s fingers when she tried to prevent the assault from continuing. Second, C.S. called 911 within minutes after the assault and was crying uncontrollably throughout the call. Third, C.S.'s statements about the sexual assault and her injury directly related to why she was hysterical. On this record, the trial court acted well within its discretion in admitting the 911 call.

¶14  Appellant argues an indeterminate amount of time occurred before the 911 call, which "could have been as great as ten minutes after the alleged assailant left," and the victims therefore had time to fabricate their statements to the 911 dispatcher. Statements need not be made immediately after an event to qualify as an excited utterance. *State v. Rivera*, 139 Ariz. 409, 411 (1984). Instead, because the guarantee of trustworthiness that serves as the basis of the exception is the stress of the event, the most important thing to consider is the physical and emotional condition of the

declarant. *Id.* (citation omitted). Evidence that "a declarant still appeared nervous or distraught and that there was a reasonable basis for continuing emotional upset can be sufficient proof of spontaneity even where the interval between the startling event and the statement is long enough to permit reflective thought." *State v. Johnson*, 183 Ariz. 623, 634 (App. 1995) (quoting *State v. Anaya*, 165 Ariz. 535, 540 (App. 1990)). As the trial court recognized, C.S. was crying and "hysterical" during the 911 call, and at several points, the dispatcher had to try to calm C.S. by having her engage in breathing exercises. Moreover, C.S. continued to be hysterical and crying even after police officers arrived. These facts support the conclusion that when C.S. placed the 911 call, she was still suffering from the emotional trauma of the attacks.

¶15　　　Appellant also contends the 911 call was not an excited utterance because C.S. did not personally observe the sexual assault of K.T. The record belies Appellant's contention. C.S. testified she woke up and *saw* the silhouette of a man standing over the victims' bed and then forcing himself on K.T. When she tried to push him off K.T., she *felt* an "excruciating pain and warmth in [her] hand and that's when [she] knew that [she] was bleeding." After her fingers were cut open, she "curled up in a fetal position" and *listened* helplessly as Appellant sexually assaulted K.T., who was at the same time digging her fingernails into C.S.'s shoulder. C.S. *overheard* Appellant state, "Now you guys can have a baby together." Finally, because of her personal observations of the event, C.S. was able in court to describe the attacker as a Black male and identify his voice as Appellant's. The record fully supports the conclusion that C.S. personally observed Appellant's sexual assault of K.T. Accordingly, the trial court did not abuse its discretion by admitting the 911 phone call from C.S. as an excited utterance.

## II.　Evidence Regarding the Victims in ADOC

¶16　　　Appellant next argues the trial court erred in granting the State's motion in limine to preclude evidence the victims met while incarcerated in ADOC. He maintains this evidence would have bolstered his argument that K.T. and C.S. had prior knowledge of the legal system and, after engaging in a fight resulting in an injury to C.S., fabricated the sexual assault because they feared returning to prison due to potential domestic violence charges.

¶17　　　Evidence is relevant if it has any tendency to make a fact that is of consequence in the action more or less probable. Ariz. R. Evid. 401. A trial court may exclude relevant evidence, however, if its probative value is

substantially outweighed by a danger of unfair prejudice. Ariz. R. Evid. 403. Because the trial court is in the best position to make that balancing determination, we afford that court substantial discretion in deciding the admissibility of such evidence. *Kiper*, 181 Ariz. at 65.

¶18 Before trial, the State filed a motion in limine to preclude any reference to the victims meeting "while serving time in the Department of Corrections or that either have been to prison for any reason." After Appellant's response and oral argument,[3] the trial court granted the motion, concluding the probative value of the evidence was substantially outweighed by the danger of unfair prejudice:

> THE COURT FINDS that although there is some probative value to this evidence, the probative value is substantially outweighed by unfair prejudice. Should either victim testify, she will be able to be impeached by her prior felony conviction. Moreover, [Appellant] will be able to introduce that the victims had a relationship with one another. From these facts, [Appellant] can argue that the victims had prior knowledge of the workings of the criminal justice system. [Appellant] can also argue that the prior conviction relates to the credibility of each victim. That either or both victims had been to prison is not essential for such arguments to be made, and the prejudice from such allegations is substantial.

¶19 On appeal, Appellant argues the precluded evidence was highly probative because it would have bolstered his position that he and K.T. engaged in consensual intercourse, he left, K.T. and C.S. had a domestic altercation in which C.S. was significantly injured, and K.T. and C.S. then made a 911 call to get C.S. medical help while insulating them from domestic violence charges and further prison time. Evidence the victims met while incarcerated would not, however, make consensual intercourse between Appellant and K.T. any more probable and would have been of *de minimis* relevance. Moreover, nothing prevented Appellant from cross-examining the victims on their prior felony convictions and domestic violence history, and he did so, questioning K.T. about her prior relationship with C.S., which included "an incident involving domestic

---

[3] The record on appeal does not include the transcript of the argument on the motion in limine. Because Appellant bore the burden of producing it, we presume the missing transcript supports the trial court's decision. *See State v. Kerr*, 142 Ariz. 426, 430 (App. 1984).

violence." Appellant also questioned K.T. on her criminal history, eliciting admissions to two prior felony convictions. As to C.S., Appellant did not ask about her criminal history, but did elicit admissions that she and K.T. had previous instances of domestic violence in their relationship. Appellant used this history to argue in closing that C.S. and K.T. had engaged in "another incident of domestic violence" and concocted the allegations against him to prevent another report of a domestic violence incident. Appellant could present his defense to the jury, and the court did not abuse its discretion in concluding the probative value of evidence the victims met while in prison was substantially outweighed by the danger of unfair prejudice.

### III.    Evidence Regarding the Bus Incident

**¶20**    Appellant also argues the trial court abused its discretion by granting the State's pretrial motion to admit evidence he was kicked off a city bus approximately 1.5 miles from the crime scene less than an hour after the crimes occurred. Appellant contends this evidence was improper character evidence that only "served to bias the jury as to [his] character."

**¶21**    Pursuant to Arizona Rule of Evidence 404(b):

> [E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, *identity*, or absence of mistake or accident.

(Emphasis added.) Evidence of a prior bad act is admissible if: (1) the evidence is admitted for a proper purpose; (2) the evidence is relevant; (3) the evidence is not unfairly prejudicial under Rule 403; and (4) the court gives an appropriate limiting instruction upon request. *State v. Mott*, 187 Ariz. 536, 545 (1997). Also, the State must show by clear and convincing evidence that the other act occurred and the defendant committed the act. *State v. Terrazas*, 189 Ariz. 580, 584 (1997).

**¶22**    Before trial, the State moved to admit evidence that Appellant had been kicked off a city bus for being argumentative with the driver approximately 1.5 miles from the victims' apartment less than one hour after the charged crimes occurred. The State argued the evidence was admissible pursuant to Rule 404(b) because it was directly relevant to establishing Appellant's identity as the perpetrator. Appellant responded

that the evidence was not relevant and mischaracterized him as a criminal, and he was not disputing he was at the victims' apartment.

¶23 At the hearing on the motion, the parties stipulated the event had occurred. The State argued it had the burden—independent of whether Appellant disputed it at trial—of proving each element of the case beyond a reasonable doubt. Appellant's counsel argued the State had other evidence that proved identity. The trial court concluded the State was introducing the evidence for the proper purpose of identity and the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, but it limited the State from informing the jury why Appellant was kicked off the bus. The court also offered Appellant a limiting instruction if he requested one.

¶24 At trial, the State called the detective who had interviewed Appellant, asking him why Appellant remembered the bus incident when he could not remember anything else from that morning. The detective affirmed that Appellant explained "it was traumatic that he got kicked off and that's why he remembers that." The State later called Officer Masino, who testified she responded to a call regarding a bus disturbance and came in contact with Appellant at the scene at approximately 6:30 in the morning—about an hour after the offenses at issue here occurred—and approximately twelve blocks from the victims' apartment.

¶25 Appellant argues the trial court abused its discretion in its pretrial ruling allowing the testimony about the bus incident.[4] In this case, however, the parties stipulated that the event occurred. Further, the evidence was relevant for the purpose of proving identity because it provided additional evidence that Appellant was in the approximate area when the crimes occurred, and although Appellant stated he did not contest identity, the State still bore the burden of proving its entire case beyond a reasonable doubt and was entitled to use evidence of its own choice. *See Old Chief v. United States*, 519 U.S. 172, 189 (1997); *State v. Schilleman*, 125 Ariz. 294, 298 (1980). Additionally, by precluding the State from presenting the reason Appellant was kicked off the bus, the court minimized any

---

[4] Appellant opened the door to a fuller description of the bus incident when he testified in detail about the incident, including that "some racial slurs [were] thrown" at him. *See State v. Lindsey*, 149 Ariz. 472, 477 (1986); *State v. Levyas*, 221 Ariz. 181, 189, ¶ 25 (App. 2009). The State therefore called Officer Masino as a rebuttal witness to testify further about the incident; however, Appellant challenges only the trial court's initial pretrial ruling on appeal.

danger of unfair prejudice, and did not abuse its discretion by finding any prejudice did not substantially outweigh the probative value of the evidence. Finally, the court gave a limiting instruction at the end of the trial, instructing the jury that it must not consider the evidence to determine "the defendant's character or character trait, or to determine that the defendant acted in conformity with the defendant's character or character trait and therefore committed the charged offense." We presume the jury followed the court's instructions. *See State v. Reyes*, 232 Ariz. 468, 471, ¶ 7 (App. 2013). Accordingly, the trial court did not abuse its discretion in admitting evidence that Appellant was kicked off a city bus approximately 1.5 miles from the victims' apartment within one hour after the offenses occurred.

**CONCLUSION**

¶26 We affirm Appellant's convictions and sentences.

