SUPREME COURT OF ARIZONA
En Banc

STATE OF ARIZONA,　　　　　　　　　)　Arizona Supreme Court
　　　　　　　　　　　　　　　　　　)　No. CR-10-0085-AP
　　　　　　　　　　　　Appellee, )
　　　　　　　　　　　　　　　　　　)　Maricopa County
　　　　　　　　　v.　　　　　　　　)　Superior Court
　　　　　　　　　　　　　　　　　　)　No. CR2008-144114-001 DT
MANUEL OVANTE, JR.,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Appellant. )
　　　　　　　　　　　　　　　　　　) **O P I N I O N**
_____)

Appeal from the Superior Court in Maricopa County
The Honorable Warren J. Granville, Judge

**AFFIRMED AS AMENDED**

_____

THOMAS C. HORNE, ARIZONA ATTORNEY GENERAL　　　　　　　Phoenix
　　　By　Kent E. Cattani, Chief Counsel
　　　　　Criminal Appeals/Capital Litigation Section
　　　　　Jeffrey A. Zick, Assistant Attorney General
　　　　　Ginger Jarvis, Assistant Attorney General
Attorneys for State of Arizona

JAMES J. HAAS, MARICOPA COUNTY PUBLIC DEFENDER　　　　Phoenix
　　　By　Thomas K. Baird, Deputy Public Defender
　　　　　Tennie B. Martin, Deputy Public Defender
Attorneys for Manuel Ovante, Jr.

_____

**B A L E S**, Vice Chief Justice

**¶1**　　　This automatic appeal concerns Manuel Ovante, Jr.'s 2010 death sentence for murdering Damien Vickers. We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. §§ 13-4031 and -4033(A)(1) (2010).

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**　　　On June 11, 2008, Ovante and three friends drove to

Jordan Trujillo's house, hoping she would give them methamphetamine. Trujillo refused, but Ovante returned repeatedly that day attempting to obtain drugs. When Ovante and his friends entered Trujillo's home the last time, they encountered Trujillo, who was asleep on a living room couch, Damien Vickers, and Gabriel Valenzuela. Without expressing anger or distress, Ovante suddenly pulled out a gun.

¶3 Ovante pointed the gun at Valenzuela and yelled "[W]ho left the safety on?" Ovante released the safety, pointed the gun again at Valenzuela, and told him not to move. He then shot the sleeping Trujillo twice in the head and began shooting at Valenzuela and Vickers, wounding both of them. Trujillo appeared to die almost instantly, but Vickers begged for help and Valenzuela called the police.

¶4 After the shooting, Ovante and two of his friends got into a truck and tried to convince the third friend, Nathan Duran, to leave Vickers behind. Duran instead dragged Vickers into the back of the truck. Vickers was bleeding from his bullet wounds, holding onto Duran, and asking to be taken to a hospital. Ovante refused to do so. After Vickers died in the truck, Ovante decided to abandon his body in an alley. Valenzuela, who remained in the apartment, survived the attack.

¶5 The State charged Ovante with two counts of first degree murder and one count of aggravated assault. The State

2

sought the death penalty, alleging as aggravating circumstances that Ovante had been previously convicted of a serious offense (the aggravated assault of Valenzuela), *see* A.R.S. § 13-751(F)(2) (2008), and had been convicted of one or more other homicides committed during the commission of the offense, *see id.* § 13-751(F)(8). Ovante pleaded guilty to all charges and admitted both aggravating circumstances.

¶6 At the conclusion of the penalty phase, the jury determined Ovante should be sentenced to life in prison for the murder of Trujillo and sentenced to death for Vickers' murder. Accordingly, the trial court entered sentences of life with a possibility of parole after twenty-five years for Trujillo's murder, death for Vickers' murder, and a mitigated term of six years in prison for the aggravated assault on Valenzuela.

### DISCUSSION

**A. Ability to Challenge the Guilty Pleas on Appeal**

¶7 The State argues that Ovante cannot challenge the validity of his guilty pleas as part of this Court's mandatory direct review in a capital case, and that he, like a noncapital defendant seeking to challenge a guilty plea, must instead seek post-conviction relief under Rule 32. We reject this argument.

¶8 Our criminal rules expressly provide that a defendant who pleads guilty in a noncapital case waives direct appeal and can seek review only by petitioning for post-conviction relief

3

under Rule 32. Ariz. R. Crim. P. 17.1(e); s*ee also id.* 17.2(e) (requiring court to advise defendant that guilty plea will "waive the right to have the appellate courts review the proceedings by way of direct appeal").

**¶9** The rules addressing capital cases, in contrast, do not distinguish between capital defendants who plead and those who are convicted after trial. Instead, if a death sentence is imposed, the superior court clerk files an automatic notice of appeal that suffices "with respect to all judgments entered and sentences imposed in the case." *Id*. 31.2(b). Thus, regardless of any plea, this Court automatically reviews a death sentence.

**¶10** Accepting the State's argument that any judgment of guilt entered as result of a plea can only be reviewed in a Rule 32 proceeding would unnecessarily bifurcate appellate review in capital cases. The State conceded this point at oral argument. In death penalty cases, consistent with Rule 31.2(b), this Court will review the validity of a plea on direct appeal, before it reviews the capital sentence.

**B. Adequate Factual Basis for the Guilty Pleas**

**¶11** Ovante contends that because he did not understand the difference between first and second degree murder, his statements at the plea hearing did not establish premeditation, and thus there was not an adequate factual basis for his first degree murder guilty pleas.

4

¶12     We review the trial court's acceptance of a guilty plea for abuse of discretion. *State v. Djerf*, 191 Ariz. 583, 594 ¶ 35, 959 P.2d 1274, 1285 (1998). Before accepting a plea, a court must establish a factual basis for each element of the crime. Ariz. R. Crim. P. 17.3; *State v. Carr*, 112 Ariz. 453, 455, 543 P.2d 441, 443 (1975). This Court may examine the entire record on appeal but must vacate the plea if the record does not support "strong evidence of guilt" for every element. *State v. Wallace*, 151 Ariz. 362, 365, 728 P.2d 232, 235 (1986) (quoting *State v. Hamilton*, 142 Ariz. 91, 93, 688 P.2d 983, 985 (1984)); *State v. Diaz*, 121 Ariz. 16, 18, 588 P.2d 309, 311 (1978) (holding that a reviewing court can consider the record, and not only plea colloquy, to determine if there is a factual basis for a plea).

¶13     To support a plea to first degree, premeditated murder, a court must find that facts support a conclusion that the accused (1) intended to cause the death of another, (2) caused the death of another, and (3) acted with premeditation. *See* A.R.S. § 13-1105(A)(1) (2008). "Premeditation means that the defendant acts with either the intention or the knowledge that he will kill another human being, when such intention or knowledge precedes the killing by any length of time to permit reflection." A.R.S. § 13-1101 (2008).

¶14     There is no prescribed period of time which must

elapse between the formation of the intent to kill and the act of killing, but the record must at least circumstantially support that a defendant considered his act and did not merely react to an instant quarrel or in the heat of passion. *State v. Thompson*, 204 Ariz. 471, 479 ¶¶ 31–32, 65 P.3d 420, 428 (2003). "[T]hreats made by the defendant to the victim, a pattern of escalating violence between the defendant and the victim, or the acquisition of a weapon by the defendant before the killing" are circumstances that can establish premeditation. *Id.* at ¶ 31.

**¶15**     Ovante argues that the record is ambiguous or leaves to "guesswork" whether he actually reflected before killing. But he acknowledged in the plea colloquy that he had given "some thought to [killing Trujillo] before [he] committed the act." Ovante then agreed with defense counsel's statement that, if the case proceeded to trial, the evidence would show Ovante had pointed the gun at Valenzuela but had to stop and release the safety before he could actually shoot. When the judge asked whether Ovante had given some thought to murdering the second victim, Vickers, Ovante took a moment to confer with his counsel before answering, "Yes." Evidence presented in the penalty phase corroborated Ovante's admissions.

**¶16**     Circumstantial evidence further shows Ovante's premeditation. Ovante carried a loaded gun into Trujillo's house, paused to disengage the gun's safety, targeted only

6

persons who had not accompanied him, and shot each murder victim multiple times. Combined with his statements at the plea hearing, this evidence amply supports a finding that Ovante reflected on the killings before pulling the trigger.

¶17 Ovante might not have fully understood that premeditation distinguishes first degree murder from second degree murder, *compare* A.R.S § 13-1104(A) (2008) (second degree murder does not require premeditation), *with id.* § 13-1105(A)(1) (first degree murder is premeditated), but his understanding of the legal terminology is not determinative. "Arizona courts have consistently held that it is sufficient that the court, not the defendant, satisfy itself of the factual basis for the plea." *State v. Herndon*, 109 Ariz. 147, 148, 506 P.2d 1041, 1042 (1973). The trial court was not required to explain the distinction between first and second degree murder and was free to accept the guilty plea if it was satisfied that the record established premeditation. *See State v. DeGrate*, 109 Ariz. 143, 144, 506 P.2d 1037, 1038 (1973).

## C.   Prosecution's Decision to Seek the Death Penalty

¶18 Ovante next contends that Arizona lacks statewide standards to identify when the death penalty will be sought, leaving the decision to individual county attorneys. He also asserts that he did not have a fair opportunity to enter a plea agreement, alleging that in 2009 he offered to plead guilty in

7

exchange for life sentences but the Maricopa County Attorney, who allegedly refused to enter plea agreements while seeking reelection in 2008, rejected this offer. This exercise of "[u]nbridled charging discretion," Ovante argues, violates due process, equal protection, and the Eighth Amendment. We review Ovante's developed constitutional claims de novo. *State v. Smith*, 215 Ariz. 221, 228 ¶ 20, 159 P.3d 531, 538 (2007).[1]

**¶19**    "Arizona's death penalty scheme [is] designed to narrow, in a constitutional manner, the class of first degree murderers who are death-eligible," and prosecutors may seek the death penalty only in the limited cases that qualify under the scheme. *State v. Carlson*, 202 Ariz. 570, 582 ¶ 45, 48 P.3d 1180, 1192 (2002) (quoting *State v. Soto-Fong*, 187 Ariz. 186, 202, 928 P.2d 610, 626 (1996)); *see also State v. Sharp*, 193 Ariz. 414, 426 ¶ 49, 973 P.2d 1171, 1183 (1999) (holding the discretion afforded to prosecutors under Arizona's capital sentencing scheme does not violate the Eighth Amendment).

**¶20**    We reject Ovante's challenge to the discretion generally afforded prosecutors under Arizona's death penalty statutes. *See State v. Salazar*, 173 Ariz. 399, 411, 844 P.2d 566, 578 (1992); *see also Gregg v. Georgia*, 428 U.S. 153, 199

---

[1]    Although Ovante alleges violations of several federal and state constitutional provisions, he fails to develop arguments for most of them. This Court does not consider or address

8

(1976) (upholding a statutory scheme that narrows the types of defendants eligible for death and affords a prosecutor the option to seek or not seek the death penalty at various stages in the criminal process). Our holding comports with opinions by many other courts recognizing that prosecutorial discretion is appropriately constrained by death penalty statutes and appellate review. *See*, *e.g.*, *State v. Rizzo*, 31 A.3d 1094, 1163–64 (Conn. 2011) (citing cases rejecting constitutional challenges); *Wade v. State*, 41 So.3d 857, 875–76 (Fla. 2010); *State v. Banks*, 271 S.W.3d 90, 154–55 (Tenn. 2008); *State v. Yates*, 168 P.3d 359, 400–01 (Wash. 2007).

**¶21** The record also does not show that the death penalty was sought in Ovante's case for a discriminatory or otherwise improper reason. Ovante contends that defendants in Maricopa County are more likely to receive the death penalty than defendants similarly situated in other locations. To show a violation of the Equal Protection Clause of the Fourteenth Amendment, however, "the defendant must show purposeful discrimination that had a discriminatory effect on him and in his particular case." *State v. Roque*, 213 Ariz. 193, 226 ¶ 143, 141 P.3d 368, 401 (2006) (citing *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)). Because our criminal justice system affords

---

unsupported constitutional claims. *State v. Hardy*, 230 Ariz. 281, 285 ¶ 12 n.3, 283 P.3d 12, 16 n.3 (2012).

prosecutors wide discretion to decide which crimes to prosecute and which sentences to pursue, "a defendant must show 'exceptionally clear proof' of discrimination for the Court to infer discriminatory purpose. Any legitimate explanation for a state's decision to seek the death penalty precludes a finding of a Fourteenth Amendment violation." *Id.* (internal citations omitted).

**¶22** "In Arizona, the state may seek the death penalty if it can prove beyond a reasonable doubt that a defendant committed first degree murder and can also prove the existence of at least one aggravating factor." *Id.* at 227 ¶ 144, 141 P.3d at 402. Ovante committed two murders and admitted two aggravating circumstances, rendering him eligible for a death sentence. That the County Attorney sought this sentence in many qualifying cases in Maricopa County, or rejected Ovante's offers to plead guilty in exchange for a life sentence, does not make the decision to seek death in his case unconstitutional. *See id.* ¶ 143.

**D. Prosecutor's Closing Argument**

**¶23** Ovante argues that, in closing argument, the prosecutor (1) impermissibly suggested that Ovante had failed to take responsibility for his actions by implying Ovante's presentation of mitigation and request for mercy were negative conduct, and (2) made "an overly emotional play coloring Mr.

10

Ovante as a poisoned seed from a bad family." Because Ovante did not object at trial, we review the statements for fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567 ¶ 19, 115 P.3d 601, 607 (2005).

**¶24** Prosecutors are given "wide latitude" when presenting arguments. *State v. Morris*, 215 Ariz. 324, 336 ¶ 51, 160 P.3d 203, 215 (2007). They are permitted to suggest reasonable inferences from the facts presented, but their statements should not "call[] the jurors' attention [to] matters [the jury] should not consider." *Id*. Although highly misleading statements might sometimes taint a trial, "cautionary instructions by the court generally cure any possible prejudice" from statements by counsel because juries are presumed to follow the trial court's instructions. *State v. Manuel*, 229 Ariz. 1, 6 ¶ 24, 270 P.3d 828, 833 (2011).

**¶25** Here, the trial court instructed the jurors that statements by the lawyers should not be interpreted as evidence and should only be used as tools to help the jury "understand the evidence and apply the law." Given these instructions, we evaluate Ovante's claim presuming that the jury recognized that the lawyers' statements were not evidence and that the jury sought to reach a "reasoned, moral judgment about which sentence [was] justified and appropriate." *See State v. Newell*, 212 Ariz. 389, 403 ¶¶ 67–68, 132 P.3d 833, 847 (2006) (holding that

11

jury instructions negated improper comments of prosecutor); *State v. Anderson*, 210 Ariz. 327, 342 ¶ 50, 111 P.3d 369, 384 (2005) (holding that jury instructions cured the prosecutor's misstatement of the law).

### i. Failure to take responsibility

**¶26** Ovante argues that, by telling the jury that Ovante failed to take responsibility for his actions, the prosecutor improperly suggested "that the presentation of mitigation evidence constitutes a failure to own up to the [criminal] conduct." He argues the prosecutor directly attacked the process of mitigation instead of specific mitigating factors, permitting the jury to unfairly conclude that Ovante's "plea for his life [during the mitigation process] was nothing more than a failure to take responsibility."

**¶27** The record does not support Ovante's claim that the State improperly argued that the presentation of mitigation was itself a failure to accept responsibility. During the penalty phase, the defense contended that Ovante's negative childhood and background played a large part in his predicament, repeatedly making statements like "our choices are the product of our backgrounds," and "[w]hat goes into the recipe bowl is oftentimes what comes out." In response, the State argued that Ovante had a choice in all of the decisions he made but was attempting to deflect responsibility.

12

**¶28** Although the State is prohibited from telling a capital jury that it cannot consider mitigating evidence, the State may argue that mitigating evidence should not be given much weight. *See State v. Pandeli*, 215 Ariz. 514, 526 ¶¶ 35-36, 161 P.3d 557, 569 (2007). Because the prosecutor was rebutting mitigation evidence presented about Ovante's troubled childhood and dysfunctional family, the prosecutor's comments did not create fundamental error.

### ii. Overly Emotional Argument

**¶29** Ovante next argues that the prosecutor's closing argument made "an overly emotional play coloring [him] as a poisoned seed from a bad family." He asserts that the prosecutor focused heavily on the "generational violence" present in Ovante's family and allowed the jury to speculate that, if it did not impose the death sentence, other murders could occur during this or future generations.

**¶30** The prosecutor's comments about generational violence responded to defense arguments that Ovante's conduct partially resulted from his dysfunctional family. The prosecutor said, "But what happens down the line? When does it stop? When does anyone in the Ovante family have to stand up and say, I made choices? I am responsible for what I did. Instead of poisoning further generations of Ovantes . . . ." Viewed in context, these statements militated against the notion that one

13

generation of a family "poisons" the next, and did not urge the jury to sentence Ovante to death to prevent such "poisoning." Even if the prosecutor's words were susceptible to misunderstanding, we presume the trial court's admonition negated any improper statements. *See, e.g., Newell,* 212 Ariz. at 403 ¶¶ 67–68, 132 P.3d at 847 (holding that jury instructions negated prosecutor's comments). Ovante has not shown that the prosecutor's closing comments were fundamental error.

**E.   Evidence of Circumstances of the Murders**

**¶31**      Ovante argues that the trial court abused its discretion by allowing the State, at the beginning of the penalty phase, to present evidence of the circumstances of his crimes. Noting that he pleaded guilty to the charges and stipulated to the alleged aggravating factors, Ovante argues that this evidence was irrelevant to the thrust of his mitigation and unfairly prejudicial.

**¶32**      This argument is meritless. This Court recently reaffirmed that the State may offer evidence in the penalty phase about the circumstances of the murder regardless of whether the defendant presents any mitigation. *See State v. Nordstrom*, 230 Ariz. 110, 114–115 ¶¶ 10, 13, 280 P.3d 1244, 1248–49 (2012). Ovante has not established that any of the State's evidence regarding the circumstances of the murders and the aggravated assault (or the related (F)(2) and (F)(8)

14

aggravating circumstances) was unduly prejudicial.  *Cf. id.* at 115 ¶ 11, 280 P.3d at 1249 (holding that evidence of circumstances of crime was not unduly prejudicial).

**F.   Final Jury Instructions**

**¶33**       Ovante argues that the trial court erred in its final jury instructions by stating that Ovante had admitted two statutory aggravating factors and then failing to identify the particular aggravators for the jurors.  He contends that the applicable aggravating factors had to be identified in order for jurors to assess whether the mitigating factors called for leniency.  Because Ovante did not object to the instructions at trial, we review this claim for fundamental error.  *State v. Kuhs*, 223 Ariz. 376, 386 ¶ 52, 224 P.3d 192, 202 (2010).

**¶34**       In the preliminary instructions before the penalty phase, the trial court explained that Ovante had admitted two aggravating factors and then briefly described those factors.  Both parties received a copy of the final jury instructions before they were read to the jury and neither party objected to how the aggravating and mitigating circumstances were handled.  In the final jury instructions, the court said, "The defendant has admitted that statutory aggravating circumstances exist, which make the defendant eligible for the death sentence," but the court did not specifically identify which aggravating factors Ovante had admitted.  The prosecution, however, did

15

explain the two aggravating factors in its closing statement.

**¶35**     "In assessing the adequacy of jury instructions, the instructions must be viewed in their entirety to determine whether they adequately reflect the law." *State v. Garcia*, 224 Ariz. 1, 18 ¶ 75, 226 P.3d 370, 387 (2010).   A court is not required to give a separate instruction if its substance has already been covered by other instructions, *id.*, and "[a] conviction will not be reversed based on the instructions unless, taken as a whole, they misled the jurors." *State v. Zaragoza*, 221 Ariz. 49, 53 ¶ 15, 209 P.3d 629, 633 (2009).

**¶36**     The jury instructions, taken as a whole, were accurate and not misleading.   The preliminary instructions specifically identified the applicable aggravating circumstances.   At the beginning of the penalty phase, the prosecution presented evidence regarding the crimes and aggravating factors that Ovante had admitted.   Although it would have been better practice for the trial court to have again identified the particular aggravating factors in the final instructions, the failure to do so here was not fundamental error.

## G.  Discrepancy between the Minute Entry and Oral Pronouncement of the Sentence

**¶37**     Ovante argues his sentence must be remanded for clarification because the trial judge orally pronounced that his sentences would run consecutively but entered a minute entry

16

ordering two of them to run concurrently. In pronouncing the sentences, the trial court observed that the victims' suffering warranted separate sentences. Accordingly, the court gave Ovante a six-year prison term for the aggravated assault charge, to begin on February 24, 2010, and stated that Ovante would "then be sentenced to life" in prison for count 1 and death for count 2. The court also announced that Ovante's life sentence for count 1 would run consecutively to his death sentence for count 2. Although the corresponding minute entry states that the sentence on count 1 will run consecutively to that for count 2, it states that all sentences will begin on February 24, 2010.

**¶38** When a discrepancy between the trial court's oral pronouncement of a sentence and the written minute entry can be clearly resolved by looking at the record, the "[o]ral pronouncement in open court controls over the minute entry." *State v. Whitney*, 159 Ariz. 476, 487, 768 P.2d 638, 649 (1989). This Court can order the minute entry corrected if the record clearly identifies the intended sentence. *Id.* at 487, 768 P.2d at 649.

**¶39** Here, the trial court clearly stated its intent that the sentence on the aggravated assault count would begin on February 24, 2010, and the life sentence on count 1 would run consecutively to the death sentence on count 2. By stating that Ovante's death sentence would be concurrent with his sentence

17

for the aggravated assault, the minute entry is not inconsistent with the oral pronouncement of the sentences.  The minute entry, however, incorrectly states that the sentence of life with possible parole after twenty-five years will also begin on February 24, 2010.  Accordingly, we correct the minute entry to delete this statement, leaving the sentence on count 1 to run consecutively to the sentence on count 2, and affirm the trial court's oral pronouncement of the sentences.

## H.    Abuse of Discretion Review

**¶40**      Because Ovante murdered Vickers after August 1, 2002, we review the jury's imposition of a death sentence for abuse of discretion.  A.R.S. § 13-756(A) (2008); *State v. Chappell*, 225 Ariz. 229, 242 ¶ 56, 236 P.3d 1176, 1189 (2010).

### 1.  Aggravating Circumstances

**¶41**      Ovante admitted the (F)(2) aggravator based on his conviction of aggravated assault with a handgun against Valenzuela and the (F)(8) aggravator based on his premeditated murder of Trujillo.  After Ovante pleaded guilty, the court conducted a second colloquy to confirm that he was knowingly, voluntarily, and intelligently admitting the aggravators and that he understood that death was a possible sentence.

**¶42**      Nothing prevents a defendant from waiving his Sixth Amendment right to have a jury determine aggravating circumstances.  *State v. Brown*, 212 Ariz. 225, 231 ¶ 26, 129

18

P.3d 947, 953 (2006) (citing *Blakely v. Washington*, 542 U.S. 296, 310 (2004)). The record amply supports the (F)(2) and (F)(8) aggravators admitted by Ovante.

### 2. **Mitigating Circumstances**

**¶43** At the penalty phase, each juror must determine whether mitigating circumstances exist and whether death is the appropriate penalty. *See* A.R.S. § 13-751(C). "The defendant must prove the existence of the mitigating circumstances by a preponderance of the evidence," but "the jurors do not have to agree unanimously that a mitigating circumstance has been proven to exist." *Id*.

**¶44** Ovante presented several mitigation witnesses. The days of testimony detailing Ovante's childhood drew a bleak picture of a life filled with poverty, violence, crime, molestation, and drug use. The defense discussed his longstanding substance abuse, and Ovante expressed remorse during allocution, but there was little evidence showing a strong connection between the mitigation and the murders.

### 3. **Propriety of death sentence**

**¶45** We must uphold a jury's decision that death is appropriate if any "reasonable juror could conclude that the mitigation presented was not sufficiently substantial to call for leniency." *State v. Gallardo*, 225 Ariz. 560, 570 ¶ 52, 242 P.3d 159, 169 (2010). In the context of independent review, the

19

Court has given "extraordinary weight" to the multiple murders aggravating circumstance. *State v. Hampton*, 213 Ariz. 167, 185 ¶ 90, 140 P.3d 950, 968 (2006). Here, in light of the (F)(2) and (F)(8) aggravators and the mitigation evidence in the record, a reasonable juror could conclude that the mitigating circumstances were not "sufficiently substantial to call for leniency." *Id.*; *see also* A.R.S. § 13-751(C).

## I.  Additional Issues

**¶46** Stating that he seeks to preserve certain issues for federal review, Ovante lists thirty-one additional constitutional claims that he acknowledges have been rejected in previous decisions.  We decline to revisit these claims.

CONCLUSION

**¶47** We affirm Ovante's convictions and his sentences as corrected.

_____
Scott Bales, Vice Chief Justice

CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
A. John Pelander, Justice


_____
Robert M. Brutinel, Justice

_____
Ann A. Scott Timmer, Justice