NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JESSE MESA, *Appellant*.

No. 1 CA-CR 20-0042
FILED 10-7-2021

Appeal from the Superior Court in Maricopa County
No.  CR2015-001779-001
The Honorable Warren J. Granville, Judge *Retired*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Gracynthia Claw
*Counsel for Appellee*

The Stavris Law Firm PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Michael J. Brown joined.

**F U R U Y A**, Judge:

¶1        Jesse Mesa appeals his convictions and sentences for felony murder, first-degree burglary, armed robbery, unlawful control of another's vehicle, and arson of an occupied structure. Mesa argues the superior court erroneously denied his motion for judgment of acquittal, committed fundamental error by making misstatements at trial, and improperly sentenced him. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        On April 29, 2014, Mesa, Alex Garcia (Mesa's brother), Erica Vasquez (Alex's then-girlfriend), and Lorenzo Garcia (a friend) were together in a one-bedroom apartment, when the suggestion was made to rob a nearby smoke shop.[1]  The group thereafter set out for the smoke shop. Alex took a gun and Mesa brought an empty black duffel bag. The group discussed the robbery en route and Alex expressed his intention to kill the store clerk.

¶3        Security cameras from a nearby restaurant captured Mesa and Alex walking toward the smoke shop. Once inside, Mesa gathered merchandise while Alex went through the cash drawers. Lorenzo later testified that when he entered the smoke shop, he witnessed Mesa shoot the store clerk in the head.  Thereafter, Mesa started fires inside the shop. Mesa and Alex left in the victim's Escalade, which was later found abandoned without a license plate.

¶4        An autopsy revealed that the victim had been shot six to eight times and died as a result. A black duffel bag containing merchandise was recovered from the crime scene with Mesa's DNA on it.

---

[1]        Another individual was with the group in the apartment and involved in planning the robbery but did not ultimately take part in its execution.

2

On May 2, 2014, Phoenix police officers executed a search warrant at the apartment, recovering merchandise from the smoke shop and a prescription pill bottle in the victim's sister's name. Among the merchandise recovered was one large glass bong that had Mesa's fingerprint on it.

**¶5**        Following Mesa's arrest, the State indicted him on six counts: (1) conspiracy to commit first degree murder; (2) first-degree murder; (3) first-degree burglary; (4) armed robbery; (5) vehicle theft; and (6) arson of an occupied structure.

**¶6**        At trial, the State called Erica and Lorenzo to testify. Their testimony, along with testimony of police officers, other witnesses, and the other evidence collected during investigation, was used to establish the case against Mesa. During trial, "armed burglary" was used interchangeably with first-degree burglary to describe Count 3. After the State's presentation, Mesa unsuccessfully moved for a judgment of acquittal based upon the insufficiency of the evidence.

**¶7**        The jury acquitted Mesa of Count 1. The State argued Count 2 under theories of felony murder and premeditated murder, but the jury only returned a unanimous guilty verdict under felony murder. The jury also returned guilty verdicts for Counts 3, 4, and 6, as charged, and for the lesser-included offense of unlawful control of another person's vehicle for Count 5.

**¶8**        The court sentenced Mesa in January 2020. Mesa timely appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

### I.    Mesa's Motion for Judgment of Acquittal

**¶9**        Mesa argues the court erred in denying his motion for judgment of acquittal based upon the insufficiency of the evidence pursuant to Arizona Rule of Criminal Procedure ("Rule") 20(a).

**¶10**        We review the court's ruling on a Rule 20 motion de novo. *State v. Montes Flores*, 245 Ariz. 303, 308, ¶ 23 (App. 2018) (citing *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011)). The controlling question on a Rule 20 motion is whether the record contains "substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a); *see also West*, 226 Ariz. at 562, ¶ 14. Substantial evidence "is such proof that reasonable persons could accept

as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Mathers*, 165 Ariz. 64, 67 (1990) (quoting *State v. Jones*, 125 Ariz. 417, 419 (1980)). "Both direct and circumstantial evidence should be considered in determining whether substantial evidence supports a conviction." *West*, 226 Ariz. at 562, ¶ 16 (citing *State v. Spears*, 184 Ariz. 277, 290 (1996)). If reasonable minds may disagree on the inferences drawn from the facts, the case must be submitted to the jury and the Rule 20 motion denied. *Id.* at 563, ¶ 18 (citations omitted). Further, we view the evidence in the light most favorable to the prosecution. *Mathers*, 165 Ariz. at 66 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶11 In the main, Mesa contends insufficient evidence supports his convictions because Erica and Lorenzo were not credible witnesses, since they had allegedly lied to law enforcement, testified inconsistently under oath, and were beneficiaries of "lenient plea offers," thereby providing a motive to lie for their own ends. In essence, Mesa argues that because there are questions regarding their veracity and reliability, we must altogether ignore Erica's and Lorenzo's testimony, and therefore hold no substantial evidence supports Mesa's guilt beyond a reasonable doubt. However, Mesa's position is mistaken.

¶12 Applying the standards outlined above, we cannot ignore the inculpatory statements and inferences that may be reasonably drawn from Erica's and Lorenzo's testimony any more than could the superior court. *West*, 226 Ariz. at 563, ¶ 18; *see State v. Austin*, 124 Ariz. 231, 234 (1979) ("Weighing the credibility of witnesses is the province of the jury, not the judge.") (citation omitted); *State v. Buccheri-Bianca*, 233 Ariz. 324, 334, ¶ 38 (App. 2013) ("[N]o rule is better established than that the credibility of the witnesses and the weight and value to be given to their testimony are questions *exclusively* for the jury.") (citing *State v. Cox*, 217 Ariz. 353, 357, ¶ 27 (2007)) (emphasis added). Further, Mesa was given—and took full advantage of—the appropriate opportunity to argue against Erica's and Lorenzo's credibility during closing argument.

¶13 Moreover, in addition to eyewitness testimony, the State offered other corroborating evidence to support its case—including videos, fingerprints, and DNA evidence. Having considered the entirety of the record, the parties' briefing, and the relevant law, the State presented substantial evidence to warrant the convictions it sought beyond a reasonable doubt, and the court did not err in denying Mesa's Rule 20 motion.

## II.    Erroneous Description of Count 3

**¶14**        Mesa argues the court committed fundamental error when, in ruling on Mesa's Rule 20 motion, it erroneously stated Count 3 was "armed robbery." Indeed, the transcript reflects the court stated "Count 3, armed robbery – I'm sorry. Count 3, armed robbery, Count 4, armed robbery."

**¶15**        Because Mesa failed to enter any contemporaneous objection before the court, our review is limited to fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). Mesa bears the burden of proving an error occurred, *id.* at 568, ¶ 23, and "that (1) the error went to the foundation of the case, (2) the error took from [Mesa] a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial," *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). For the first two prongs, Mesa must also make a separate showing of prejudice and "bears the burden of persuasion at each step." *Escalante*, 245 Ariz. at 142, ¶ 21 (citing *Henderson*, 210 Ariz. at 567–68, ¶¶ 19, 26).

**¶16**        Here, Mesa contends that this error, made outside of the presence of the jury, deprived him of a fair trial. However, Mesa offers neither argument, nor legal authority to support this position. Mesa's failure to develop this argument, as required by Rule 31.10(a)(7)(A), constitutes waiver. *See State v. Sanchez*, 200 Ariz. 163, 166, ¶ 8 (App. 2001) (citations omitted).

**¶17**        Mesa further argues fundamental error occurred when, during reading of the jury's verdicts, the court clerk mistakenly referred to Count 3—again, without objection—as "armed robbery." Mesa also asserts the court should have given an additional unanimity instruction—beyond its general unanimity instruction—to avoid potential jury confusion.

**¶18**        Mesa also fails to develop these arguments with supporting reasoning or legal authority, which constitutes waiver. *See id.* And our review of the record does not reveal how the court's erroneous recitation of Count 3—first outside of the presence of the jury, and then after jury deliberations—could have infected the trial with unfairness, prejudiced the jury, or affected the verdict. Further, the record demonstrates that Count 3 was accurately represented in the indictment, final jury instructions, and verdict forms, all of which the court correctly read aloud. Finally, while Mesa contends for the first time on appeal that an additional unanimity instruction was required to avoid jury confusion, the

record already contains exactly such an instruction. In response to a question from a juror during deliberations, the court instructed, "If you are able to reach a verdict, any verdict for not proven or proven must be unanimous." Therefore, Mesa has not shown fundamental error.

## III.    Discrepancies in Sentencing

**¶19**        Mesa challenges discrepancies between his pronounced sentences and the sentencing minute entry and confinement orders. Mesa notes that at the sentencing hearing, the court stated Count 3 would run concurrent to Count 6. However, the written sentencing and confinement orders both record Count 6 as consecutive. When there is a discrepancy between the reporter's transcript and the minute entry, "the circumstances of the particular case determine which shall govern." *State v. Rockerfeller*, 9 Ariz. App. 265, 267 (1969) (citations omitted); *see also State v. Ovante*, 231 Ariz. 180, 188, ¶ 38 (2013) (noting that remand is unnecessary to resolve apparent conflict between a court's oral pronouncement of a sentence and the resulting written minute entry when the discrepancy can be clearly resolved by looking at the record) (citing *State v. Whitney*, 159 Ariz. 476, 487 (1989)). When read in context, the court's misspoken statement that Count 6 would run concurrently renders its own analysis nonsensical, and we therefore may clarify this discrepancy on appeal. *See Ovante*, 231 Ariz. at 188, ¶ 38 (citing *Whitney*, 159 Ariz. at 487).

**¶20**        Convictions that arise out of a single act must be sentenced concurrently. *See* A.R.S. § 13-116. Courts use a three-part test to determine what constitutes a single act. *See State v. Carlson*, 237 Ariz. 381, 400, ¶ 80 (2015) (citing *State v. Gordon*, 161 Ariz. 308, 312–13 (1989)). The court considers the facts of each crime separately, subtracting from the factual transaction the evidence necessary to convict on the ultimate charge. *Id.* (citing *Gordon*, 161 Ariz. at 315). If the remaining evidence satisfies the elements of the other crime, then consecutive sentences may be permissible under A.R.S. § 13-116. *Id.* The likelihood increases that a defendant committed a single act under A.R.S. § 13-116 if, given the entire transaction, it was factually impossible to commit the ultimate crime without also committing the secondary crime. *Id.* But a court should ordinarily find that a defendant committed multiple acts and receive consecutive sentences where the defendant's conduct in committing the lesser crime caused the victim to suffer an additional risk of harm beyond that inherent in the ultimate crime. *Id.* Here, the court made a record of these considerations at sentencing:

I have thought through the facts of the case. First, as a legal component, the Court finds that the elements of armed robbery are distinct from the elements of first-degree felony murder. However, the facts supporting them are related and so I have taken that into account. And I've taken into account as the evidence was presented that there were different management decisions that were made over the course of these -- probably the whole thing took five minutes, but they were separate decisions made, and I've taken that into account.

First was the decision to do this at all because you knew that Alex was armed and you knew that the plan was to take property that was not yours by – by threat of force. *There was a separate decision then to set fire* in hopes of maybe covering up the evidence that you may have left. It was the separate decision to take the – [victim]'s car. There was a separate decision to fire your weapon after Alex had fired his weapon. The result of all of that is that [victim] is the victim of a robbery, which led to his death.

(Emphasis added.)

**¶21**         If the court intended for Count 6, arson, to run concurrently, it would not have needed to emphasize the separateness of the arson. The fact that it took care to do so reveals the court's intent that the sentences run consecutively, as stated in both the resulting written sentencing minute entry and confinement orders.

**¶22**         Additionally, the court's intent to impose a consecutive sentence for Count 6 is further supported by the context proceeding the mistake; "It is ordered that because the Court *does find a [spatial] difference and an elemental difference*, that the sentence for count 3 begin first. To run concurrent will be count 6, which was the arson act." (Emphasis added.) A finding of a spatial and elemental difference would only be necessary to imposing sentence for Count 3 and Count 6 consecutively, as found in the sentencing and confinement orders. "When we can ascertain the trial court's intent from the record, we need not remand for clarification." *State v. Lopez*, 230 Ariz. 15, 18, ¶ 9 n.2 (App. 2012); *see also Ovante*, 231 Ariz. at 188, ¶ 38 (citing *Whitney*, 159 Ariz. at 487). Because review of the record, in full context, clearly supports the court's intent to impose a consecutive sentence for Count 6, we deny Mesa's request to alter the sentencing and confinement orders.

**CONCLUSION**

¶23      For the forgoing reasons, we affirm Mesa's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:   AA