NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

DANIEL AGUILAR, *Appellant*.

No. 1 CA-CR 22-0222
FILED 2-21-2023

Appeal from the Superior Court in Yavapai County
No. P1300CR202101115
The Honorable Krista M. Carman, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Law Office of Nicole Countryman, Phoenix
By Nicole Countryman
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge David D. Weinzweig and Judge D. Steven Williams joined.

**H O W E**, Judge:

¶1        This appeal is filed in accordance with *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297 (1969). Counsel for Daniel Aguilar has advised this court that he has found no arguable questions of law and asks us to search the record for fundamental error. Aguilar has filed a supplemental brief in propria persona, which the court has considered. After reviewing the record, we affirm Aguilar's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶2        We view the facts in the light most favorable to sustaining the judgment and resolve all reasonable inferences against Aguilar. *See State v. Fontes*, 195 Ariz. 229, 230 ¶ 2 (App. 1998). Aguilar lived in his trailer with his girlfriend, Anna, and her son, James.[1] On August 3, 2021, early in the morning, Aguilar and Anna got into an argument while in their bedroom. James, who slept on a couch in the other room of the trailer, overheard the argument and immediately video-called his aunt, Michelle. Michelle could hear screaming over the phone and called 9-1-1. Officer David Herrera responded to the 9-1-1 call and arrived at the scene with other accompanying officers, where they heard a male and female arguing inside the trailer. The officers knocked on the door, announced themselves, and Anna opened the door.

¶3        Officer Herrera handcuffed Aguilar and took him away from the trailer. Officer Herrera noticed a "scratch mark or red mark that looked like a scratch mark" on Aguilar's cheek. Officer Herrera asked Aguilar what had happened to his cheek. Aguilar answered that he had hurt it at work. Officer Herrera also noticed redness and swelling in Anna's right side upper lip. Anna was unaware that anything had happened to her lip.

---

[1]        We use pseudonyms to protect the privacy of the victim and witnesses.

¶4        While speaking with James, Officer Jeffrey Pizzi, another officer at the scene, learned about a fight between Anna and Aguilar on July 26, 2021, during which Aguilar had hit Anna with a hammer. At first, Anna denied that Aguilar had hit her with a hammer the week before. But after Officer Pizzi told her that if she did not tell him what had happened the week before, he would arrest her and send James to the Department of Child Services ("DCS"), she admitted that Aguilar had hit her with a hammer in her right temple and on her ankle. Officers Pizzi then found two hammers inside the trailer and collected them.

¶5        For the July incident, the State charged Aguilar with two counts of aggravated assault,  class 3 felonies. For the August incident, the State charged Aguilar with two counts of disorderly conduct, class 1 misdemeanors, and one count of assault, a class 1 misdemeanor. Before trial, Anna retracted her statement to the police that Aguilar had hit her with a hammer on July 26, 2021. At trial, Anna testified that she retracted her statements to the police because she was seeing Aguilar and did not want him to go to prison.

¶6        James testified that he saw Aguilar hit his mother's forehead with a hammer. Michelle testified that she saw an injury on Anna's ankle and a red bump on her head. Officer Herrera, the case agent, testified that he had observed injuries on both Aguilar and Anna. He also testified that he took pictures of Anna's head injury. Finally, he testified that Aguilar had been taken away from the trailer when he talked to Anna and James.

¶7        After a jury trial on the two felony charges, Aguilar was convicted of one count of aggravated assault and acquitted of the other count of aggravated assault. The jury also found that the State had proved two aggravating factors: (1) the use, threatened use or possession of a deadly weapon or dangerous instrument during the commission of the crime, and (2) the offense was committed in the presence of a child and the relationship between the victim and the defendant is one of persons residing or having resided in the same household or the defendant and victim were in a romantic sexual relationship.

¶8        After a bench trial on the three misdemeanor charges, the trial court found Aguilar guilty of one count of disorderly conduct and not guilty of the other two misdemeanor counts. At the sentencing hearing, the trial court sentenced Aguilar to seven and a half years in prison for the aggravated assault count and awarded him 38 days of pre-incarceration credit. For the disorderly conduct count, the trial court sentenced Aguilar to six months in the county jail and awarded him 38 days of

pre-incarceration credit. The sentences were to run concurrently with one another. The trial court also stated that a fine of $150,000, together with a surcharge of 78 percent was available for the aggravated assault offense. However, the judgment of guilt and sentence awarded Aguilar six months credit for time served for the disorderly conduct count. Similarly, the judgment of guilt and sentence reflects the fine as $1,000 instead of $150,000. Aguilar timely appealed.

## DISCUSSION

**¶9** Aguilar's counsel has advised this court that after a diligent search of the entire record, he has found no arguable question of law. In his supplemental brief, Aguilar argues that his Fourteenth and Eighth Amendment rights were violated.[2] We review Aguilar's convictions and sentences for fundamental error. *See State v. Flores*, 227 Ariz. 509, 512 ¶ 12 (App. 2011). To prevail under this standard of review, a defendant must establish that (1) error exists, (2) the error is fundamental, and (3) the error caused him prejudice. *State v. Smith*, 219 Ariz. 132, 136 ¶ 21 (2008).

**¶10** Aguilar first argues that his Fourteenth Amendment rights were violated because the conviction lacked sufficient evidence. Anna retracted her story before the trial and testified at trial that she had told Officer Pizzi that Aguilar hit her with a hammer only because Officer Pizzi threatened to arrest her and send James to DCS. He also argues that the pictures of Anna's temple showed no injury. "It is . . . fundamental error to convict a person for a crime when the evidence does not support a conviction." *State v. Allen*, 253 Ariz. 306, 314 ¶ 93 (2022) (quoting *State v. Stroud*, 209 Ariz. 410, 412 ¶ 6 n. 2 (2005)). But Aguilar's arguments about the sufficiency of the evidence go merely to the weight of evidence and credibility of the witnesses. This court does not weigh evidence; "that is the function of the jury." *State v. Williams*, 209 Ariz. 228, 231 ¶ 6 (App. 2004). "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *Id*. (quoting *State v. Arredondo*, 155 Ariz. 314, 316 (1987)). At trial, the jury heard several witnesses' testimonies, and

---

[2]    Aguilar has also moved this court to release certain documents and consider "any newly discovered evidence" from these documents. Because newly discovered evidence is generally relevant in a petition for post-conviction relief under Arizona Rule of Criminal Procedure 32.1(e), we deny the motion without prejudice to filing the motion in the superior court during post-conviction proceedings.

saw pictures of Anna's head injury and the hammers. This was sufficient evidence to find Aguilar guilty, and we find no error.

¶11        Aguilar next argues that the court committed fundamental error in instructing the jury that to prove aggravated assault, the State was required to prove that he "intentionally, knowingly, or recklessly cause[d] a physical injury" to Anna. He argues that aggravated assault can be committed only by "intentionally placing a victim in a reasonable apprehension." Aguilar's argument is meritless. Under Arizona law, a person commits assault by (1) "[i]ntentionally, knowingly or recklessly causing any physical injury to another person"; or (2) "[i]ntentionally placing another person in reasonable apprehension of imminent physical injury"; or (3) "[k]nowingly touching another person with the intent to injure, insult or provoke such person." A.R.S. § 13–1203(A). An accused is guilty of aggravated assault if, when committing an assault, the accused "uses a deadly weapon or dangerous instrument." A.R.S. § 13–1204(A).

¶12        Here, for the two counts of aggravated assault, the State alleged that Aguilar, while using a hammer, a deadly weapon or dangerous instrument, "intentionally knowingly, or recklessly" caused a physical injury to Anna. In the jury instructions, the jury was instructed that to prove aggravated assault, the State was required to show that Aguilar "intentionally, knowingly, or recklessly cause[d] a physical injury to another person," and that he "used a deadly weapon or dangerous instrument to cause the physical injury." Thus, we see no error.

¶13        Next, Aguilar argues that his due process rights were violated because Officer Herrera was present during the jury selection and throughout the trial. But Officer Herrera was the case agent, and as such, the State was entitled to his presence during the jury selection and throughout the trial. *See* Ariz. R. Crim. P. 9.3(a)(2) (B). Thus, the trial court did not err in allowing Officer Herrera to be present in the courtroom.

¶14        For his last argument, Aguilar challenges the composition of the jury. He argues that his Sixth Amendment rights were violated because Hispanics make up 14.7% of the Yavapai County population, but no Hispanics were on the jury.[3] To establish a prima facie violation of the Sixth Amendment's fair-cross-section requirement, Aguilar must show: "(1) that the group alleged to be excluded is a 'distinctive' group in the community;

---

[3]        Aguilar's fair-cross-section argument implicates his Sixth Amendment rights; he incorrectly cites to the Eighth Amendment to the United States Constitution. *Berghuis v. Smith*, 559 U.S. 314, 319 (2010).

(2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Id.* (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)). Although Aguilar claims that Hispanics make up 14.7% of the Yavapai County population, he provides no supporting evidence. Further, he does not claim that the second and the third requirement are met, nor does he make showings in support of the second and third requirements. Thus, because Aguilar fails to develop his argument, he has waived it. *See State v. Vassell*, 238 Ariz. 281, 285 ¶ 18 (App. 2015) (failure to argue a claim ordinarily waives that claim).

**¶15**         We have further reviewed the record for reversible error, *see Leon*, 104 Ariz. at 300, and find none. All the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. Aguilar was represented by counsel through trial and sentencing. The sentences imposed were within the statutory guidelines. We decline to order further briefing and affirm Aguilar's convictions and sentences.

**¶16**         We note, however, that the judgment of guilt and sentence awards Aguilar six months credit for time served for the misdemeanor, disorderly conduct count. At the sentencing hearing, the court awarded Aguilar only 38 days of pre-incarceration credit. Further, during the sentencing hearing, the trial court stated that a fine of $150,000 was available for the aggravated assault offense, but the judgment of guilt and sentence reflects the fine as $1,000.[4] "When a discrepancy between the trial court's oral pronouncement of a sentence and the written minute entry can be clearly resolved by looking at the record, the oral pronouncement in open court controls over the minute entry." *State v. Ovante*, 231 Ariz. 180, 188 ¶ 38 (2013). And this court "can order the minute entry corrected." *Id.* But because correcting the judgment of guilt and sentence results in detriment to Aguilar, and the State has not filed a cross-appeal, we order no changes to the judgment of guilt and sentence. *See Chaparro v. Shinn*, 248 Ariz. 138, 142 ¶ 19 (2020) (citing *State v. Dawson*, 164 Ariz. 278, 283–84 (1990)).

**¶17**         Upon the filing of this decision, defense counsel shall inform Aguilar of the status of the appeal and of his future options. Counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See*

---

[4]      The State also recommended to the trial court that Aguilar be ordered to pay a fine of $1,000.

*State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Aguilar shall have 30 days from the date of this decision to proceed, if he desires, with a pro per motion for reconsideration or petition for review.

## CONCLUSION

¶18　　　　For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA